## No. 2560
### Second Circuit

---

### BENJAMINE T. HARVILLE v. EICHER-WOODLAND LUMBER COMPANY, INC.

---

(February 8, 1926, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant—Par. 156.**

Where all the evidence fails to show that the relationship of the employer and employee existed at the time of the injury, the injured workman suing for compensation under the Workmen's Compensation Act No. 20 of 1914 cannot recover.

Appeal from Ninth Judicial District Court of Louisiana, Parish of Rapides. Hon. Leven L. Hooe, Judge.

This is a suit brought by an injured employee for compensation under Section 8, Subsection 1 (b), of the Workmen's Compensation Act No. 20 of 1914, as amended by Act 43 of 1922.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

(The recent amendment of Section 8 of Act 20 of 1914 is Act 216 of 1924. Editor's note.)

D. W. Gibson; Thornton, Gist & Richie, of Alexandria, attorneys for plaintiff, appellant.

Bruton T. Dawkins, of Alexandria, attorney for defendant, appellee.

ODOM, J. Plaintiff brings this suit under the Workmen's Compensation Act (Act 20 of 1914 and the amendment thereof) to recover compensation for total disability during 400 weeks.

On the 9th day of June, 1925, the plaintiff was cutting logs in the woods, when a tree fell on him and seriously wounded him.

There is little, if any, dispute as to the extent of plaintiff's injuries; but as this suit turns on another point, it is not necessaray to discuss the extent of plaintiff's injuries; as we have reached the conclusion that defendant is not liable to him, because there did not exist, at the time of the injury, the relationship of employer and employee between him and the defendant company.

The defendant denies liability on the ground that plaintiff was not in its employ at the time of his injury, and the question as to whether or not he was in defendant's employ is one of fact.

Counsel for both plaintiff and defendant have quoted at length from the testimony, which they urge in support of their re-

spective claims on this particular point. But we have carefully read all of the testimony, and the folowing is our summary thereof:

W. B. Clark an'd a man by the name of Atwood operated a small sawmill at Olla, Louisiana, during the year 1924 and possibly up to some time in the year 1925. It seems that they disposed of their mill at Olla, and Clark purchased a sawmill located at Manifest, in Catahoula parish, at some time in the latter part of 1925 for the sum of $10,000.00. Fairbanks, a son of the party who previously owned the mill, testified that the mill was only leased to Clark with the privilege of purchasing the same at the sum of $10,000.00 at the end of six months. However that may be, it is not disputed that Clark and Atwood took charge of the mill at Manifest under the name of Clark-Atwood Lumber Company. Just what arrangement was made between Clark and Atwood with reference to the ownership and management of this mill is not very clear. However, we think that does not matter, as the facts are that they took charge of the sawmill and began to operate it at some time in the spring of 1925.

It seems that Clark and Atwood accepted an order from the defendant company for a bill of lumber in the month of May. They had no timber and they made arrangements with the defendant company to put up money to purchase a small tract of timber. It seems that the defendant company was willing to advance the money with which to purchase the timber in order that Clark and Atwood might fill the order which they had accepted for lumber. Later on it developed that Clark and Atwood did not have sufficient funds with which to make their payroll and Clark again sought the aid of the defendant company.

The testimony ·clearly establishes that the defendant company agreed to advance the money with which to pay the labor employed in the operation of the mill, in order that Clark and Atwood might be enabled to fill the order for lumber which they had accepted.

It is the contention of the plaintiff that whereas Clark and Atwood began the operation of the mill, the same was taken over and was being operated by the defendant company at the time the plaintiff was injured and that, therefore, the defendant is liable to him.

It is not contended by any one that Clark and Atwood either sold or leased this sawmill· to the defendant; the plaintiff merely claiming that after defendant began to advance money with which to operate the mill it took over the entire management thereof and was in charge of it at the time he was injured.

The testimony introduced by plaintiff on this point is summarized as follows:

The plaintiff himself testified that he was employed by a man named Smith on the 8th day of June, 1925. He says that this man Smith came to his house at night in company with Clark and that an agreement was reached that night. He says that Smith is the man who made the trade with him, and that Smith told him that Mr. Lewis, manager of the defendant company, was in charge of the mill and would see that the labor was paid. He says that Clark told him at the time that he had nothing to do with the mill but that the same had been taken oved by the Eicher-Woodland Lumber Company, Inc. He says that he has not seen this man Smith since that time. But it developed that Smith was nothing more than a common laborer and his absence was not accounted for at the trial by any of the witnesses.

Plaintiff was asked who he was. working for, and he said he did not know; that he was told by the man, Smith, that he was to work for the defendant company.

John Deville, another witness called for plaintiff, testified that he was woods foreman on June 10, 1925, and was working for the Eicher-Woodland Lumber Company, Inc., and was hired by Mr. Lewis, its manager. He says that Harville was working under him and that the man, Smith, whom Harville claimed hired him, was only a common laborer in the woods. He said that a man named Simpson paid off under Lewis' instructions and was supposed to be the mill foreman. He testified that Atwood and Simpson shipped the lumber and that Lewis brought money to the mill and that Simpson paid off, but that he turned in his time to Atwood. He says, furthermore, that at the time Harville was hurt Clark had quit and that the defendant company had taken over the management of the mill. He does not know this of his own personal knowledge, but says that all he knew about it was what Simpson told him. He says that Clark did not stay at the mill regularly but went and came.

He testified, further, that Lewis gave instructions as to the length of the logs to be cut.

W. B. Clark, who was called as a witness for plaintiff, says that Lewis, the manager of the defendant company, was running the mill when Harville was hurt. Inasmuch as there is a dispute as to who employed this man, Simpson, it is well here to state that Clark, in a portion of his testimony, states positively that he did not employ Simpson but that Simpson was brought to the mill and put in charge thereof by Lewis, the manager of the defendant company. However, on this particular point Clark, on cross-examination, virtually admits that he did employ Simpson as a sawyer and that he employed him for the reason that his partner, Atwood, was sick and that while he, Clark, preferred to do his own sawing, yet there was nobody to take charge of the woods,

and that he put Simpson in charge of the mill so that he, Clark, could take charge of the woods.

The testimony of Mr. Lewis on this point is that Simpson had been sawyer for a man named Moody but was out of employment at this particular time and that he took Simpson to Clark in order that Simpson might procure work, and that he personally was anxious to see Simpson get the work because he knew him to be a good sawyer and he was interested in seeing that Clark got out the lumber to fill his order.

Simpson himself says that he was employed by Clark to take charge of the mill and to do the sawing.

Atwood, Clark's partner, testified that Clark told him that he had employed Simpson to do the sawing and take charge of the mill. He further testified that he kept the time, made out the payrolls, and that when the payrolls were submitted to the defendant company it furnished the money with which to make the payment, and that Simpson paid the hands.

We think there is no question but that the man, Simpson, was employed not by the defendant company but by Clark to take charge of the mill. Clark states positively that he was not in charge of the mill at the time the plaintiff was hurt, although there are some portions of his testimony which would indicate that he is mistaken about that.

A man by the name of Montpelier testified that he was working for John Deville in the woods; that he did not know for whom he was working but that Lewis paid him, and he says that Lewis told him to go to work and that he would be responsible for his pay. He says that Atwood, Clark's partner, was the timekeeper and that Simpson was in charge of the mill, and that Clark was around the mill, but that he does not know what Clark was doing there.

A man by the name of Fairbanks, called as a witness for plaintiff, testified that Simpson was operating the mill in June and July, and that he talked with Simpson in the latter part of June and that Simpson told him that he was operating the mill for the defendant company, and told him, further, that they were charging the expenses of operating to the Clark-Atwood Lumber Company because they were afraid that the plaintiff would bring suit against them for his injuries.

Turning now to the testimony introduced by the defendant, John L. Lewis, manager of the defendant company, details the transaction which his company had with Clark and states that his company agreed to advance the money with which to buy the timber and to make the payrolls in order that Clark-Atwood Lumber Company might be enabled to fill the order for lumber which they had accepted. He states, positively, that his company at no time had charge of the mill; that it neither hired nor discharged anyone, and that while Simpson was in charge of the mill he had charge of it as an employee of Clark.

He testifed, further, that his company is not engaged in the business of manufacturing lumber, but that it is a wholesale dealer in lumber and does not operate mills. He admits that his company did advance money with which to make the payrolls, but he says it took no part whatever in the management of the mill.

As previously stated, Atwood, Clark's partner, was called as a witness for defendant and testified substantially that Clark told him that he had employed Simpson to take charge of the mill and that he and Simpson paid the men when Lewis furnished the money on behalf of the defendant company.

He states, further, that Clark told him that the defendant company was to furnish the money with which to pay off the hands, and he states, further, that the defendant company had absolutely nothing to do with the management of the mill at any time and that all the supplies for the mill were purchased in the name of Clark-Atwood Lumber Company.

Clark testified that at one time he posted a notice at the mill to the effect that he had nothing further to do with it and that he would not be responsible for any of the debts of the mill. Clark was asked whether or not this notice was posted prior or subsequent to the date on which the plaintiff was hurt, and he testified that he was not positive on that point. Atwood, on the contrary, testified positively that this notice was posted by Clark some ten days or two weeks subsequent to the date on which plaintiff was injured.

As already stated, Simpson declared positively that he was employed by Clark and that all he did in connection with the operation of the mill was as an employee of the Clark-Atwood Lumber Company.

Mr. J. H. Eicher testified that at no time did his company take over the operation of the mill but that it merely advanced the money with which to purchase the timber and make the payrolls; and, further, that his company had never at any time operated a sawmill.

Mr. N. J. Woodland, secretary of the defendant company, knew nothing about the transaction, but stated that the company was a wholesale dealer in and not a manufacturer of lumber.

Gus Deville, another witness called by defendant, says that he was employed by Clark and that Clark had charge of the woods for some time after plaintiff was hurt. He says that Lewis or Simpson told

him that they would see that he got his pay.

A man by the name of Prudhomme testified that Lewis told him that he was backing the payroll.

To summarize, our conclusion of the testimony is: ' That the defendant company did not at any time take over the management of the sawmill concern and that all it did was to furnish the money to purchase the timber and make the payrolls, which amounts were furnished in order that Clark-Atwood Lumber Company might be enabled to fill the order. Our conclusion further is that if it may be said that the defendant company did take charge of and operate the mill, it did so after the plaintiff was hurt. That being true, even conceding plaintiff's contention that defendant was virtually the owner and operator of the mill, there was no contractual relations between the plaintiff and defendant.

Plaintiff does not contend that he made his contract with the defendant company, but, on the contrary, says that he was employed by a man named Smith, and it is not shown that Smith was anything more than a common laborer in the woods with the plaintiff or that he had any authority whatever to make the contract.

Counsel for plaintiff makes the point that the defendant did not account to the Clark-Atwood Lumber Company for the expenses of operating the mill or for the proceeds of the sale of the lumber, thus showing that the defendant company practically took over the entire mill outfit and the management thereof and recognized no responsibility to plaintiff. However, on this point Clark was asked if the defendant made any statement to him and he replied that he had not received a statement personally but that he thought one had been made to Mr. Atwood.

We think the testimony clearly establishes that there was no contract, either express or implied, between plaintiff and the defendat company, on the day he was hurt, and that he cannot, for that reason, recover. This was the conclusion reached by the judge of the lower court and we think he did not err.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.