**WILSON v. ROBERTS et al.**

No. 5957.

Court of Appeal of Louisiana. Second Circuit.

Jan. 5, 1940.

Rehearing Denied Feb. 7, 1940.

Writ of Certiorari and Review—Denied March 4, 1940.

Oliver & Digby, of Monroe, for appellants.

McHenry, Lamkin & Titche, of Monroe, O. A. Easterling, of Monroe, for defendant H. K. Roberts.

HAMITER, Judge.

Jerry Wilson, Jr., experienced the serious impairment of his right hand during the afternoon of June 15, 1938, while working

for H. K. Roberts, the owner and operator of a woodworking and boat building establishment. A power driven rip-saw was being used by him at the time in the preparation of milled parts for certain furniture frames that Roberts had agreed to supply to the Supreme Bedding & Furniture Manufacturing Company, Inc.

In view of the minority of the injured person, this suit, which has for its purpose the recovery of workmen's compensation, was instituted by his natural tutrix. Those made defendants are the minor's employer, H. K. Roberts, the Supreme Bedding & Furniture Manufacturing Company, Inc., which is hereinafter referred to as Company, and the latter's insurer.

Following the placing of the case at issue by appropriate answers and the trial of the merits, the district court rendered judgment condemning all defendants in solido to pay the claimed compensation during the period of disability, not, however, exceeding 400 weeks.

The Company and its insurer appealed. No appeal was perfected by Roberts and hence the judgment as against him is not before us for review.

Liability for compensation is sought to be imposed on appellants under the theory that the Company was a principal and Roberts a contractor in the preparation of the furniture frames on which the minor was working when injured, within the meaning and contemplation of Section 6, paragraph 1 of Act No. 20 of 1914, as last amended by Act No. 85 of 1926 (being the Louisiana Employer's Liability Statute), the pertinent portion of which is: "That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him; * * *."

The Company is engaged in the business of manufacturing mattresses and furniture and selling those articles at wholesale. With reference to the furniture manufacturing, it orders and acquires periodically from a woodworking establishment the milled frames for a number of sets. No equipment for their making is owned or used by it. A frame for a davenport and chair combination requires approximately 45 different pieces. When the milled parts are delivered, the Company assembles them, carves the legs and performs the wood finishing as desired, and applies the springs and upholstering. In the performance of the mentioned work it maintains and operates numerous motor-driven machines, including a cloth cutting knife, cushion fillers, air compressors, wood carvers and band saws.

Defendant Roberts, whose trade name is Roberts Boat Shop, furnishes most, but not all, of the frames required and used by the Company. The usual order given him is for fifty suits of the two-piece combination. The Company has no control over Roberts, his employees, or the method employed in making the ordered pieces. Only the right to reject them if not according to the specifications submitted is retained.

By reason of the insufficient credit rating of Roberts, all lumber used in the conduct of his business is purchased in the name of and paid for by the Company; however, it is ordered by and delivered to him. When an order for milled frames is filled, the Company settles therefor by withholding the amount due for previously purchased lumber and paying to Roberts the balance that is owing under their agreement.

Appellee contends that the lumber so acquired and used belongs to the Company, and that Roberts, in the fulfillment of the frame orders, furnishes only services. The evidence discloses that an order for 50 suits requires about 2000 feet of lumber, while Roberts usually buys 5000 feet at a time. The quantity ordinarily carried on hand by him is from 5000 to 6000 feet. The lumber is used not only in the Company's behalf, but also in the construction of boats and furniture for others as he desires; and it is often bought when no furniture order is pending. Roberts alone determines the kind, grade, quality and price of the lumber obtained. Occasionally, the Company needs lumber for the purpose of making carvings, and purchases it from Roberts. Under these circumstances, we think that the above described purchasing arrangement is employed merely for Roberts' convenience

and accommodation, and that title to the lumber used in making the furniture is in him.

As before shown, the labor performed by young Wilson when injured was in connection with the making of a quantity of milled frame pieces under an order given to Roberts by the Company. These were to be used on delivery in the construction of completed furniture for its general stock. Wilson worked as an employee of Roberts and was not in the employ of the Company. Was there an existing relationship, however, such as is contemplated by Section 6, paragraph 1 of the Compensation Act?

In the case of Seabury v. Arkansas Natural Gas Corp. 171 La. 199, 130 So. 1, 2, the Supreme Court expressed the view that the mentioned and quoted statutory provision "was intended to give the workmen a direct action against the principal engaged in the business for which the workman was employed although such workman was employed by an independent or sub-contractor of such principal."

In the instant controversy, it is clear that Roberts was not a subcontractor of the Company, for the orders given him did not cover work that it had contracted to perform for some third person. Can it be correctly held, however, that he was an independent contractor of the Company, and that the latter was engaged in the business for which Wilson was employed? In our opinion, the answer to this question must be in the negative.

The Company does not operate machinery and employ workers in the making of frames, nor does it furnish the necessary lumber and have them prepared under a contract with others. If either of these methods was followed, it might be said that woodworking, such as Wilson's employer engaged in, is a part of the Company's business. But the extent of its operations is the assembling of the milled pieces after delivery by Roberts and the finishing of them into completed furniture. The business requires the use of frames, but does not include the making of them. It may be classed as a furniture assembling or manufacturing business, while that of Roberts is known as a woodworking establishment to which separate recognition is given in the compensation statute.

The Company uses springs, thread and upholstery in the construction of its furniture, and such articles are prepared by various manufacturers from raw materials in accordance with specifications as to designs, patterns, grades, etc., submitted by the Company with its purchase orders. These articles are necessary in the conduct of the business of the Company, but are not made by it. Certainly, injured employees of such manufacturers, engaged in operations in distant cities, would not be entitled to claim compensation from the Company under the Louisiana Employer's Liability Act. Similarly, an automobile assembling plant could not be held liable for compensation by an employee of a company from which it obtains manufactured fenders.

Appellee's counsel argue that Roberts was an independent contractor under the definition found in Section 3, paragraph 8 of the Compensation Statute. This provision is: "The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished."

The Company had the right to reject the frames if they were not made according to specifications, and for that reason it may be said that Roberts was under the control of the Company as to the results of his undertaking. He, however, supplied more than services. The orders which he filled contemplated the furnishing of definite articles constructed by him from his raw materials. There was an existing relationship, we think, of purchaser and seller rather than of principal and independent contractor.

The jurisprudence of this state includes numerous cases holding that a company which acquires logs under a bona fide purchase and manufactures them into lumber is not liable under the compensation act to one employed by the vendor in his logging operations. West v. Martin Lumber Co., 7 La.App. 366; Langley v. Widow and Heirs of McDonald et al., 7 La.App. 715; Eaves v. Hillyer-Edwards-Fuller, Inc., La.App., 139 So. 510; Cannon v. Tremont Lumber Co. et al., La.App., 188 So. 431. These decisions, we think, are strikingly similar in principle to the case under consideration, and sustain our above announced view. The relationship invol-

ved in each was considered to be that of purchaser and seller.

Plaintiff's counsel cite and rely on Seabury v. Arkansas Natural Gas Corp., 171 La. 199, 130 So. 1; Hollingsworth v. Crossett Lumber Co., 184 La. 6, 165 So. 311; Lutz v. Long-Bell Lumber Sales Corp., La.App., 153 So. .319, and others. In each of these the employer of the injured claimant was performing services in connection with property or equipment that belonged to the defendant which constituted a necessary part of the latter's business. The furnishing of labor and material by the employer in the construction of articles to be delivered under a contract of sale, as in the instant case, was not therein involved.

In West v. Martin Lumber Co. et al., supra, the court appropriately said: "The lumber company was the purchaser of a commodity prepared and supplied by Tubre. Under the most liberal interpretation of the somewhat obscure language of the quoted section of the Employers' Liability Law, it would be unreasonable and contrary to common right and reason as guaranteed by the Constitution, to hold that the purchaser of a commodity is liable for compensation to the employee of the seller of such commodity."

Therefore, the judgment of the trial court in so far as it concerns the appellants here is reversed and set aside, and plaintiff's suit is dismissed at her cost in both courts.