HOOD, Judge.
This is a workmen’s compensation suit instituted by Joseph Guillory against W. A. *159 Farrar and G. L. Malone. Judgment on the merits was rendered by the trial judge condemning defendant Farrar to pay compensation benefits to plaintiff, but rejecting plaintiff’s demands against the remaining defendant, Malone. Plaintiff has appealed.
The first question presented is whether the relationship which existed between plaintiff and Malone at the time of the accident was such that Malone is or may be responsible to plaintiff under the Louisiana Workmen’s Compensation Act. Plaintiff contends that either an employer-employee or a principal-contractor relationship existed between Malone and Farrar, and that plaintiff, as an employee of Far-rar, is entitled to recover compensation benefits from Malone. Defendant Malone contends that only a vendor-vendee relationship existed between Farrar and him, and that he thus is not liable to plaintiff for compensation benefits.
The accident which gave rise to this suit occurred on July 24, 1962, while plaintiff was working as a laborer for Farrar in cutting and hauling pulpwood. Plaintiff experienced pain in his back and side while lifting a heavy piece of wood, and he contends that he has been totally disabled since that time.
Farrar was a pulpwood producer, being engaged in cutting and hauling pulpwood at that time. He owned two trucks, he employed his own crews, he made his own arrangements for the purchase of the timber which was being cut, and he conducted his cutting and hauling operations as and when he saw fit. He paid all of his own expenses for cutting and hauling the wood, including the wages due plaintiff and his other employees, and the expenses of operating and repairing his trucks and tools. After loading a truck with wood, Farrar customarily hauled the load to a wood yard where he received a ticket or receipt for it, and later he received payment for the wood from the owner of the wood yard. For a number of years prior to the accident, Farrar hauled most of' the wood which he cut to wood yards, owned and operated by defendant Malone, but at times he hauled and sold wood to others.
Malone was a pulpwood dealer at that time, being engaged in the business of' buying and selling pulpwood. He owned' and operated a wood yard in Port Barre and another yard at St. Francisville, Louisiana. Prior to that time this accident occurred, Malone entered into contracts with Crown-Zellerback Corporation and with International Paper Company, under the terms of which Malone had the exclusive right to supply the “truck-in” pulpwood to Crown-Zellerback, at its mill in St. Francisville, and the right to supply some-of the wood used by International at its. mill in Bastrop, Louisiana
For two or three years prior to the middle of 1962, Farrar hauled most of the wood which he cut to Malone’s wood yard in St. Francisville. He discontinued hauling there on July 6, 1962, for reasons not known to Malone, and on July 16, 1962, he began hauling wood to Malone’s yard in Port Barre. The loads of wood delivered to the Port Barre yard were received by Malone, who later paid Farrar for them at the rate of $10.00 per cord, except that Malone withheld $1.00 per cord of that amount for stumpage and paid this withheld portion directly to the owner of the land from which the wood had been cut. All of the amounts due for the wood, except the portions withheld for stumpage,. were paid to Farrar, no part of said payments being withheld for workmen’s compensation insurance premiums, social security, income taxes, or for any other purpose. Malone never discussed workmen’s compensation insurance with Farrar, and never at any time indicated to him that he was carrying any insurance at all covering Farrar or his employees.
Farrar made all of his own arrangements for acquiring the timber which was being cut at the time the accident occurred. Ma *160 lone had had no contact or business relationship with this particular landowner pri- or to July 28, 1962, when Malone first paid Farrar the amounts due him for the wood which had been hauled to the Port Barre .yard during the previous two-week period, and then it was at Farrar’s request that the stumpage was withheld and paid directly to the landowner.
Malone did not direct, supervise or control Farrar’s operations in any manner. Farrar was under no obligation to haul or •deliver any wood at all to Malone, and Malone was not committed to buy any wood from Farrar. Farrar was free to, and from time to time he did, sell wood to other buyers. If and when Farrar or any other producer brought wood into the wood yard, Malone could buy it or he could reject it, as he saw fit, without incurring any liability. The wood which Malone acquired from Farrar on and shortly after July 16, 1962, was sold by Malone to International Paper Company, who paid Malone for it, •and the latter, in turn,' paid Farrar $10.00 per cord for it.
Malone had no trucks or employees engaged in cutting and hauling wood to his Port Barre yard. He did not employ plaintiff in this case, he did not pay him a salary, and he stated that he had never seen •plaintiff prior to the date of the trial.
Although the facts hereinabove shown clearly indicate that only a vendor-vendee relationship existed between Malone and Farrar, plaintiff calls our attention to the following additional circumstances which he contends show otherwise: (1) In 1959, Malone sold a truck to Farrar under what they called a “buyer-lease” arrangement, the agreement being that Far-rar was to pay for the truck at the rate ■of $25.00 per week until the purchase price was paid, but if he failed to make the required payments, title to the truck was to be transferred back to Malone; (2) about the same time, Farrar bought a Caterpillar ■tractor on credit and Malone guaranteed ■the payment of the purchase price; (3) Farrar was engaged in cutting gum wood in the Port Barre area, and at that time Malone was the only wood yard owner in that vicinity who was purchasing that type of wood; and (4) Farrar testified that he thought it was a general practice for the purchaser of the wood to carrry workmen’s compensation insurance on the producer, and that he expected Malone to do that for him.
Plaintiff contends that these circumstances, together with the fact that Malone paid the landowner directly for the stump-age, establish that Malone had actual control of Farrar’s operations, and that the relationship between Malone and Farrar was that of principal-contractor or employer-employee.
With reference to the truck which Far-rar purchased, the evidence shows that Farrar paid for the truck in due course, and he now owns it. While the truck was being paid for, Farrar used it to haul wood to other wood yards as well as to the yard owned by Malone. The transaction relating to the truck, in our opinion, does not tend to show that Farrar was an employee or a sub-contractor of Malone. Farrar did not pay for the Caterpillar primarily because he had a heart attack and thereafter made some changes in his plans for using the machine. By agreement of the parties, Malone then took over the ownership of the Caterpillar. Although Malone was the only pulpwood dealer in that area who was buying gum wood at that particular time, that circumstance does not warrant a conclusion that he controlled Farrar’s operations in the sense that he became Farrar’s employer or that a principal-contractor relationship existed between them. The fact that Farrar was under the impression that Malone was carrying insurance for him and his employees does not have the effect of rendering Malone liable to Farrar or his employees for workmen’s compensation benefits, especially since the matter was never discussed by the parties and Malone has never done or said anything which tended to indicate to Farrar, *161 or to mislead him into thinking, that that was the case. And, finally, the fact that Malone withheld stumpage and paid it to the landowner, at Farrar’s request, does not warrant a conclusion that Malone either owned the timber or controlled Far-rar’s operations. We are unable to agree with plaintiff that these facts and circumstances establish that Malone exercised any control over Farrar in his pulpwood-producing operations.
The facts and circumstances presented here are almost identical to those presented in Jack v. Aetna Casualty & Surety Co., La.App. 3 Cir., 168 So.2d 476, and in Cerie v. Malone, La.App. 3 Cir., 125 So.2d 254, both of which cases involved the purchase of timber from pulpwood producers by the same defendant, G. L. Malone, under the same circumstances as are present in the instant suit. We held in each of those cases that a vendor-vendee relationship existed between Malone and the claimant, who was an employee of a pulpwood producer.
Other cases involving similar facts, and in each of which it was determined that a vendor-vendee relationship existed between the broker (Malone in this case) and the producer (Farrar), are: Smith v. Crossett Lumber Co., La.App. 2 Cir., 72 So.2d 895; Garner v. Southern Pulpwood Insurance Co., La.App. 3 Cir., 149 So.2d 157; Bryant v. United States Fidelity & Guaranty Co., La.App. 3 Cir., 163 So.2d 95; Richardson v. Jones, La.App. 3 Cir., 163 So.2d 119; and Hadnot v. Southern Casualty Ins. Co., La.App. 3 Cir., 166 So.2d 15.
Plaintiff relies largely on the cases of Kline v. Dawson, 230 La. 901, 89 So.2d 385; Jones v. Hennessy, 232 La. 786, 95 So.2d 312; and Stevens v. Mitchell, 234 La. 977, 102 So.2d 237. These cases, however, are factually distinguishable from the instant suit, as was pointed out in Bryant v. U. S. F. & G., supra, and in Redding v. Cade, La.App. 3 Cir., 158 So.2d 880.
We find nothing in the instant suit which causes us to view with suspicion the business relations between Malone and Farrar. And, since all of the legal questions presented here have been considered and determined in the cases above cited, no useful purpose would be served by discussing them again
For the reasons assigned in the above cited cases, and particularly the cases of Jack v. Aetna Casualty & Surety Company, supra, Cerie v. Malone, supra, and Bryant v. United States Fidelity & Guaranty Co., supra, we conclude that a vendor-vendee relationship existed between Malone and Farrar. We, therefore, affirm the decision of the trial court rejecting plaintiff’s demands against Malone.
Immediately after the accident occurred, plaintiff complained of pain in his back and he was treated for a back injury from the date of the accident until February 6, 1963, when he was discharged as being fully recovered from that injury. He was last seen by his treating physician on February 27, 1963, and all the medical evidence shows that plaintiff had fully recovered from his back injury by the last mentioned date. The trial judge awarded plaintiff compensation benefits, beginning on the date of the accident and continuing until February 27, 1963.
Plaintiff contends that in addition to a back injury, he also sustained a left inguinal hernia as a result of this accident, and that he is still disabled from the hernia. Defendants contend that the hernia did not result from the accident. The evidence shows that on August 14, 1962, or three weeks after the back injury was sustained, plaintiff developed a left inguinal hernia. The treating physician examined him specifically for inguinal hernias shortly after the accident occurred, and he testified that plaintiff definitely did not have a hernia at that time. He concedes that it is possible that the accident could have caused a stretching in the inguinal region, without a tearing, and that a hernia could later develop in that area, but he considers such an occurrence to be highly improbable be *162 cause “ordinarily with an acute injury you would feel some signs of it.” The evidence shows that plaintiff made no complaints of pain in the inguinal region for three weeks immediately following the accident, although he saw and was being treated by the doctor regularly during that time.
Although the trial judge did not assign written reasons for judgment, it is apparent that he concluded that the hernia did not result from the accident, since compensation was awarded only up to the time he was last seen for the back injury. We agree that the evidence fails to show a causal connection between the accident and the hernia, and we thus affirm the holding of the trial judge to that effect.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.