254 So.2d 284 (1971)
Cyprien BROUSSARD
v.
HEEBE'S BAKERY, INC., et al.
No. 4310.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1971.
Rehearing Denied October 6, 1971.
Writ Granted December 2, 1971.
*285 Howard L. Franques, Jr., of Mouton, Beard, Plaisance & Franques, Lafayette, for plaintiff-appellant.
Peter A. Feringa, Jr., New Orleans, for defendant-appellee.
Before SAMUEL, LEMMON and GULOTTA, JJ.
LEMMON, Judge.
Cyprien Broussard, a truck driver employed by Wolf's Bakery, Inc., filed a suit for damages against Heebe's Bakery, Inc., alleging that he was injured while unloading pastries from a Wolf's truck at Heebe's plant in Jefferson Parish. A motion for summary judgment asserted that Heebe's was Broussard's statutory employer under LSA-R.S. 23:1061 and liable to him for Workmen's Compensation benefits, to the exclusion of all other rights and remedies.[1]
The summary judgment dismissed the tort claim against Heebe's, and Broussard appealed.
In order to prevail on this Section Six defense, Heebe's must prove that (1) its relationship with Wolf's was that of principal-contractor; (2) the work undertaken by Heebe's through a contract with Wolf's was part of Heebe's trade, business or occupation; and (3) there is no genuine issue as to any material fact necessary to resolve the first two issues, and Heebe's is therefore entitled to judgment as a matter of law.
Glynn Ortego, Heebe's sales manager, explained by deposition and affidavit the relationship between the two corporations. The depositions of Broussard and of Vernice J. Gallet, Wolf's fleet superintendent, were also filed in connection with the motion.
Heebe's and Wolf's both are manufacturers and wholesale distributors of various bakery goods which are sold and distributed to retail outlets for resale to the general public. Prior to Broussard's accident, Heebe's had entered into an oral agreement with Wolf's, whereby Wolf's baked, packaged and delivered to Heebe's on a regularly scheduled basis certain bakery items. Heebe's in turn used these items to stock the retail outlets which it serviced, along with goods that it manufactured itself.
Wolf's manufactured the items in accordance with Heebe's specifications and packaged them in wrapping paper bearing Heebe's name and trade mark. Although delivery to Heebe's was by Wolf's trucks, the trays which were used to hold the delivered goods were owned by Heebe's.
This relationship was established after Heebe's found it to be more economical for Wolf's to manufacture these items, even though Heebe's had the capability to produce them and had once done so. This relationship ended (after the accident) when Heebe's discovered that Wolf's was furnishing similar items to Heebe's competitors under the competitors' labels.
The first issue is whether Heebe's and Wolf's were principal and contractor *286 as contemplated by LSA-R.S. 23:1061,[2] or whether they were simply purchaser and vendor, which would permit Broussard to assert a tort claim against Heebe's.
Almost all of the cases which have attempted to resolve this issue involved intermediaries between pulpwood producers or brokers and timber owners, and have become known as the "timber" or "pulpwood" cases.[3] Broussard has relied on certain of these cases to support his claim that a vendor-purchaser relationship existed between Heebe's and Wolf's at the time of his accident.[4] On the other hand, Heebe's has relied upon another line of cases to support a contrary position, these being known as "repair and maintenance" or "service" cases.[5]
In these latter cases there is generally not an object or product which is sold, but a service which is performed for a fee. These cases, therefore, do not squarely meet the vendor-purchaser issue, even though the principal-contractor requirement must still be satisfied for the described relationship to fall within LSA-R. S. 23:1061. Therefore, these decisions can offer some limited assistance.
Although the timber cases involve the sale of objects, these decisions have come as responses to special circumstances in a particular industry, and as such are limited in their usefulness for analogical application.
After a careful search we believe the decision of Wilson v. Roberts, 194 So. 88 (La.App. 2 Cir. 1940), a non-timber case, is sufficiently similar to the present case to provoke a comparative discussion.
In Wilson v. Roberts, the defendant, Supreme Bedding and Manufacturing Co., Inc., manufactured mattresses and furniture which it sold at wholesale to retail outlets. Plaintiff worked for Roberts Boat Shop, a manufacturer of frames which were sent in response to periodic orders to Supreme in an unassembled condition. Supreme then assembled the parts, carved the legs and performed other woodfinishing, and added the other parts necessary to produce a finished product. Plaintiff, injured while working at Roberts' shop making frame pieces for Supreme, sought workmen's compensation benefits from the latter, alleging that they were his statutory employer. Supreme had no machinery to *287 make its own frames and had no control over Roberts' method of making frames, but could only reject the frames sent to them if they were not satisfied with their specifications.
The court found that the relationship of Roberts to Supreme was that of vendor-purchaser and not principal-contractor. It referred to the lack of control by Supreme over Roberts, which generally is a key factor to be considered in the resolution of this particular issue. See Guillory v. Farrar, La.App., 182 So.2d 158; Cerie v. Malone, 125 So.2d 254 (La.App. 3 Cir. 1960); Brown v. City of Shreveport, 15 So.2d 234 (La.App. 2 Cir. 1943).
In the present case, there is an element of control which would not be present in a normal vendor-purchaser relationship. Heebe's required Wolf's to wrap the manufactured items in paper bearing Heebe's trade name, and these items could be sold and/or delivered to no one but Heebe's. Wolf's was additionally prohibited from supplying similar products to Heebe's competitors. When breach of this obligation was discovered by Heebe's, the relationship was discontinued.
Another factor[6] sometimes considered in the resolution of this issue is whether the object sold can be purchased on the open market. Collier v. Southern Casualty Insurance Company, 186 So.2d 161 (La.App. 3 Cir. 1966), writs refused 249 La. 479, 187 So.2d 448 (1966); Stevens v. Mitchell, 234 La. 977, 102 So.2d 237 (1957). This was certainly true in Wilson v. Roberts, supra, since Roberts could sell frames to anyone who ordered them, as was done by Supreme on a periodic basis.
However, what Heebe's purchased from Wolf's was essentially a personalized baking and wrapping service, and not a product received as a result of a series of open market transactions. Even in a pure "service" case the price of the service will include materials received or expended in connection with the service.
Although we cannot say that there were no elements of a vendor-purchaser relationship present, the existence of such elements does not automatically preclude the finding of a principal-contractor relationship. The mere fact of objects exchanging hands for a price cannot of itself be so compelling or exclusive.
As a final comment on this first issue, we note that the provisions of the Workmen's Compensation Act are to be liberally construed to include rather than exclude. Cole v. Chevron Chemical Co., Oronite Division, 427 F.2d 390, 393-394 (5 Cir. 1970); Sisk v. L. W. Eaton Co., 89 So.2d 425 (La.App. 1 Cir. 1956). This is true, even as here, where a claimant desires exclusion in order to seek tort relief. Isthmian S.S. Co. of Del. v. Olivieri, 202 F.2d 492 (5 Cir. 1953); Schmolke v. Krauss Company, 217 So.2d 789 (La. App. 4 Cir. 1969).
After reviewing all of the circumstances of this case, we conclude that there is the relationship of principal and contractor, as envisioned in 23:1061.
The second issue is whether work done by Wolf's for Heebe's was part of Heebe's trade, business or occupation. The scope of inquiry on this issue is not necessarily limited to the particular activity engaged in by the claimant[7] when injured, but it *288 is the full contract between principal and contractor which should be examined.[8]
The key is whether the services and products supplied by Wolf's to Heebe's were sufficiently similar to the services and products of Heebe's operation to be considered an integral part of Heebe's business. The facts already stated in this opinion readily support a positive conclusion and require no repetition. It is quite clear that what Wolf's did for Heebe's was once done by Heebe's itself, that Heebe's has the capability of doing this again, that this service was performed by Wolf's on a regular basis,[9] and that Heebe's performed the exact same functions for itself in regard to other bakery products.
We conclude that Wolf's manufacturing, packaging and delivering bakery products to Heebe's constituted a regular, normal and necessary part of the operation of a wholesale bakery.
As to the propriety of the summary judgment, all material facts were before the court, and there were no genuine issues as to these facts. Heebe's is therefore entitled to judgment as a matter of law. LSA-C.C.P. arts. 966, 967.
For the foregoing reasons, the judgment of the district court is affirmed, plaintiff-appellant to bear all costs.
Affirmed.

ON APPLICATION FOR REHEARING
Rehearing denied.
LEMMON, Judge (concurring in denial of rehearing).
While I concur that the original opinion is correctly decided under the existing jurisprudence, I believe that the conferring of tort immunity to the principal should be re-examined by the Supreme Court.
In my opinion LSA-R.S. 23:1061 is designed to prevent an employer from evading responsibility for compensation benefits by interposing a contractor to perform part of his trade, business or occupation. This insures compensation benefits, whether the employee is hired directly or indirectly. Once compensation benefits are insured to the employee, however, the purpose of the section is fulfilled.
The section is therefore not designed to allow an employer who farms out part of his trade, business or occupation (perhaps to evade compensation liability) to by so doing insulate himself from tort liability.
The underlying theory of the Workmen's Compensation Act is that the employer trades absolute compensation liability for absolute tort immunity. I do not believe that a statutory employer should also be awarded tort immunity, since he can ultimately recover compensation benefits through indemnity against the actual employer, whose solvency or insured status is within his power to control.
In the present case Heebe's could require, as a condition of the contract, that Wolf's carry compensation insurance on its employees, and then could negligently injure Wolf's employees with no prospective liability whatsoever, either in tort or in compensation.
This case is particularly appropriate for this discussion, since it involves an accident allegedly caused by unsafe industrial premises. In today's complex industrial system, there are few employers who perform every aspect of their trade, business or occupation exclusively with their own employees, and interrelationships of business *289 entities usually occur at many operational stages. In most situations (under our existing jurisprudence) an industrial worker injured because of unsafe premises cannot maintain a third party tort action (except actions against corporate executives), since the responsible party will either be his statutory or his actual employer. In effect, the rights of an injured worker against third persons under LSA-R.S. 23:1101 et seq. are written out of the Act in unsafe industrial premises cases by allowing tort immunity to principals under LSA-R.S. 23:1061.
NOTES
[1] See LSA-R.S. 23:1032; Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950); Meche v. Farmers Drier & Storage Company, 193 So.2d 807 (La.App. 3 Cir. 1967), writs refused 250 La. 369, 195 So.2d 644 (1967); Malone, La. Workmen's Compensation, §§ 316, 366 (1951).
[2] This section reads as follows:

"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
"Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."
[3] See, e. g., Hadnot v. Southern Casualty Insurance Company, 166 So.2d 15, 17 (La.App. 3 Cir. 1964); Malone, supra, § 123, pp. 145-146.
[4] Plaintiff principally relies on Cerie v. Malone, 125 So.2d 254 (La.App. 3 Cir. 1960), as well as Harville v. Eicher-Woodland Lumber Co., Inc., 3 La.App. 406 (1926); Guillory v. Farrar, 182 So. 2d 158 (La.App. 3 Cir. 1966) and Hadnot v. Southern Casualty Insurance Company, supra.
[5] See Meche v. Farmers Drier & Storage, supra; Allen v. United States Fire Insurance Company, 222 So.2d 887 (La. App. 2 Cir. 1969).
[6] See Schneider, Workmen's Compensation Law, Vol. 4, Chapter 17, §§ 1065-1072, pp. 16-52, for a comprehensive discussion of the various tests used to determine whether or not the relationship of principal-contractor exists.

Additionally, see Jones v. Hennesy, 232 La. 786, 98 So.2d 312 (1957) where a factor considered was the use of a defendant's equipment by the plaintiff, since in this case Heebe's trays were used to carry the bakery goods from Wolf's.
[7] While Broussard claims that Heebe's did not have anyone who unloaded specialized bakery items at other bakeries, this is not the correct focal point in resolving these isues. However, it should be pointed out that Heebe's did have a man who assisted Mr. Broussard in unloading the truck at Heebe's.
[8] Malone, La. Workmen's Compensation, § 125, p. 155; Cole v. Chevron Chemical Co., Oronite Division, supra.
[9] However, it has been held that the principal does not actually have to have men engaged in activities similar to that of his contractors employees for them to be his statutory employees, where the service performed is a regular and recurrent part of the principal's necessary operations. Meche v. Farmers Drier & Storage Company, supra.