268 So.2d 656 (1972)
263 La. 561
Cyprien BROUSSARD
v.
HEEBE'S BAKERY, INC., et al.
No. 51881.
Supreme Court of Louisiana.
November 6, 1972.
*657 Plaisance & Franques, Howard L. Franques, Jr., Lafayette, for plaintiff-applicant.
Chaffe, McCall, Phillips, Toler & Sarpy, Peter A. Feringa, Jr., Peter Frank Liberto, Bernhardt C. Heebe, New Orleans, for defendants-respondents.
Louisiana Trial Lawyers Assn., John R. Martzell, New Orleans, President, for amicus curiae.
McCALEB, Chief Justice.
Cyprien Broussard, a truck driver for Wolf's Baking Company, Inc., of Lafayette, Louisiana, filed this suit against Heebe's Bakery, Inc., of Gretna, Louisiana, to recover damages for injuries resulting from an accident allegedly due to Heebe's negligence. The Liberty Mutual Insurance Company, compensation insurer of Wolf, intervened, seeking reimbursement by priority for compensation and expenses paid to and for plaintiff, in the event his tort suit against Heebe is successful.
After answering, Heebe moved for a summary judgment and was successful in having plaintiff's suit dismissed on the ground of no cause of action in tort because plaintiff's right to compensation as an employee of Wolf, an alleged sub-contractor of Heebe, was exclusive under R.S. 23:1061,[1] barring any action in tort against Heebe as the principal. The Court of Appeal for the Fourth Circuit affirmed that judgment (see 254 So.2d 284) and we granted certiorari.
In this Court plaintiff contends, as he did below, that the appellate court erred
(1) in finding the relationship between Heebe and Wolf was that of principal-contractor, instead of vendor-vendee, and that (2) in any case, it makes no difference whether a principal-contractor relationship actually existed as it was not the intent of the legislature in adopting R.S. 23:1061 "to prevent injured employees of a contractor *658 from recovering in tort against a negligent principal."
We consider these assignments of error in reverse order because, if the postulation of plaintiff, joined by amicus curiae,[2] that the injured employee of the contractor has two causes of action against the principal (one for compensation and the other for tort) is sound, then the much debated question as to legal relationship (principal-contractor or vendor-vendee) is immaterial and moot. However, we reject this argument, for this Court has decided on more than one occasion that the remedy afforded by R.S. 23:1061 to the employee of the sub-contractor against the principal is exclusive and has the effect of conferring tort immunity on the principal. See, Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950); Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951); and Coal Operators Casualty Co. v. Fidelity & Casualty Co., 223 La. 794, 66 So.2d 852 (1953).
In Benoit v. Hunt Tool Co., supra, the Court said: "Under the Workmen's Compensation Act and the jurisprudence of this state, the exclusive remedy of the employees of the contractor against the principal, as these two terms are used in the act, is for workmen's compensation, and there is no remedy in tort against the principal, as the principal is not a third person under the provisions of Section 7 of the act. Sections 6, 7, and 34, Act 20 of 1914, as amended, LSA-R.S. 23:1061, 23:1101, 23:1032; Thibodaux et al. v. Sun Oil Co. et al., La.App., 40 So.2d 761, affirmed 218 La. 453, 49 So.2d 852. The effect of Section 6 is that the principal shall be considered the employer of the employees of the contractor, in contemplation of the statute, so that such employees shall have the right to demand compensation from the principal, and this is their exclusive remedy, and the principal cannot be held liable to the employees of the contractor in tort."
In view of our settled jurisprudence, the contention of plaintiff is one which addresses itself more properly to the legislature. That body has met time and time again and is presumed to be aware of our rulings. Yet it has not seen fit to amend the statute to conform to the views and contentions advanced by the plaintiff and amicus curiae.
Conversely, however, with respect to the first assigned error, we believe the rulings below are incorrect. There is no serious disagreement as to the facts. The controversy is over the legal relationship between Wolf and Heebe resulting therefrom.[3] The courts below concluded that a principal-contractor relationship existed, bringing Heebe within the purview of the compensation act, and rendering it immune to tort action. Plaintiff's position is that the facts establish a vendor-vendee relationship, placing Heebe without the purview of the act, and, thus, as a third person, subject to an action in tort.
The affidavits and depositions reveal that Heebe's Bakery, Inc., bakers of various kinds of bread, rolls, and pastries in a shop where the equipment required expensive labor for hand manufacture and packaging, discovered as long ago as 1964 that it could purchase many of the products from Wolf's Baking Company, Inc., and supply them to its retail outlets more economically than it could manufacture them, because Wolf's automated modern equipment permitted large volume production.
Accordingly, it entered into an oral contract under which Wolf supplied Heebe exclusively with certain items. These were baked in Wolf's Lafayette plant, packaged *659 there in wrappers carrying Heebe's name or tradename, loaded there on Wolf's trucks by Wolf's employees, and delivered by Wolf's truck driver to Heebe's Gretna plant. They were there unloaded by Wolf's driver with the use of Wolf's ramps (made by Wolf at its plant but kept on hand at the Heebe plant for convenience) without any supervision by Heebe, although it did furnish the driver with a helper to assist in the unloading. Heebe had no control whatever over the baking, away from its plant, of these items and their delivery, Wolf alone being responsible for procuring the ingredients, doing the baking, and effecting delivery to Heebe. Nor did Heebe have any control over the manner in which Wolf operated its business, or to whom it sold its products. Heebe only became the owner of the items manufactured from the time the delivery was completed with their unloading at its Gretna plant.
Wolf periodically billed Heebe for the products thus manufactured and delivered, and received payment. Heebe cancelled its contract when it discovered, almost two years after the incident here involved, that some of the identical items Wolf was purportedly producing exclusively for Heebe were, in fact, being sold to Heebe's competitors in wrappers of the competitors, contrary to the oral agreement. During this time Heebe also secured other products from at least one other bakery in another city, and, since the accident here, has expanded this practice, with the result that, for all intents and purposes, Heebe, a wholesaler and baker, had gone out of the business of manufacturing most, if not all, of the items it originally baked, particularly those it purchased from other bakeries.
In its decision, the appellate court recognized that the relationship under this oral contract contained elements of vendor-purchaser, that what Heebe "purchased from Wolf was essentially a personalized baking and wrapping service," and that the case in the jurisprudence most analogous is Wilson v. Roberts, La.App., 194 So. 88 (1940), where the relationship was found to be that of vendor-vendee. However, in concluding that Heebe's operations vis-a-vis Wolf came within the scope of R.S. 23: 1061, rendering Broussard a "statutory employee" of Heebe, the court held the status of principal-contractor existed. It reasoned that Heebe controlled the manufacture and delivery of these items, thus applying one of the generally accepted tests for determining whether the relationship of principal-contractor exists between the parties. (The emphasis is supplied.)
The elements evidencing control were found by the court to be that Wolf was required to package the products in Heebe and could not "sell and/or deliver" the products to anyone else. And after concluding that what Heebe "purchased" from Wolf was a specialized service, the court sought to distinguish the case on the ground that in pure "service" cases, the price of the service includes materials received or expended in connection therewith, apparently implying that since Heebe furnished the wrappers Wolf used, this was not included in the price of the items. (The emphasis is supplied.)
As pointed out above, we do not find that Heebe had any control whatever over the production of these items in a plant entirely separated from its premises; nor in their delivery. The use of Heebe wrappers was for the accommodation of Heebe and a part of the contract,[4] as was the agreement to sell exclusively to Heebe. The evidence further discloses the materials for the wrappers were procured and handled solely by Wolf in Lafayette and included in the purchase price, for when the contract *660 was terminated by Heebe upon discovery that Wolf was supplying identical items to competitors, Wolf, by letter, expressed regret over the loss of Heebe as a "customer" and advised it had on hand Heebe wrapping supplies amounting to $1,029.58, for which it sought reimbursement. In the letter it is stated: "I don't know the arrangements Bill Wolf made, however, it is standard practice that these supplies become the responsibility of the bakery whose name they carry."[5] (The emphasis is supplied.)
Although no mention of this is made by the appellate court, it is argued that control by Heebe of the production of these items is further evidenced by the fact that Wolf used trays furnished by Heebe in loading the baked items for delivery. But this factor is of no importance. The evidence clearly discloses that Wolf loaded the baked items on special collapsible trays furnished by Heebe as an accommodation. This facilitated Heebe's employees, for in loading its trucks with the items after delivery by Wolf, Heebe's employees were only required to handle the trays, no repacking of the material being necessary.
It is correctly stated in 99 C.J.S. verbo Workmen's Compensation, § 107, p. 369, that "The compensation act does not apply where the transaction between the immediate employer and the person sought to be held liable as his employer is that of purchase and sale, or where some other relation besides that of principal and contractor exists between them, provided, * * * the transaction is not a mere device or subterfuge to avoid liability under the workmen's compensation act." As pointed out in this same section, the relationship will not be considered as one of purchase and sale under some statutes where the contract to sell "is accompanied by an undertaking by either party to render substantial services in connection with the goods sold". [6]
Neither of these exceptions is present here. There is no contention that this contract was entered into for the purpose of avoiding liability under the act. In fact, both employers carried compensation covering their respective employees, and Broussard, as Wolf's, has already received compensation from his employer. This action against the other employer is in tort for the alleged negligence of that employer. And the mere packaging of the items in Heebe wrappers and the use of Heebe trays in loading is not such a substantial service as to render the status between the parties that of principal-contractor.
For the reasons assigned, the judgment of the Court of Appeal for the Fourth Circuit affirming the dismissal of plaintiff's suit in the district court is annulled and set aside, and the case is ordered remanded to the district court for trial on the merits. All costs in this court and in the Court of Appeal are to be borne by the defendant; all other costs are to await the final disposition of the case.
SUMMERS, J., concurs in part and dissents in part and assigns reasons.
*661 BARHAM, J., concurs. The discussion of R.S. 23:1061 is rank dictum. I reserve the right to pass on that issue when it is presented.
TATE, J., concurs and assigns additional reasons.
SUMMERS, Justice (dissenting).
I agree with those expressions of the majority opinion that the injured employee of the contractor does not have two causes of action against the principal, one for compensation and the other in tort. Under the Workmen's Compensation Act and the jurisprudence of this State, the exclusive remedy of the employees of the contractor against the principal is for workmen's compensation, and there is no remedy in tort against the principal.
However, I would not disturb the findings of the trial judge and the court of appeal on the issue of fact involved. See La.App., 254 So.2d 284. I would conclude that the relationship between Heebe and Wolf is that of principal and contractor, and plaintiff can only recover workmen's compensation. Heebe is not a "third person" under the Act subject to an action in tort. There is no intimation whatsoever that the relationship between Heebe and Wolf was designed solely to circumvent tort liability. When such a case is presented those facts will readily warrant the imposition of tort liability against the "third party". Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950); Guillory v. Farrar, 182 So.2d 158 (La.App.1966); Cerie v. Malone, 125 So.2d 254 (La.App.1960).
I respectfully dissent.
TATE, Justice (concurring).
The scholarly majority opinion correctly finds that the relationship between Heebe and Wolf was not that of principal-contractor, so as to constitute Heebe a statutory employer liable in compensation under La.R.S. 23:1061.
I therefore do not find it appropriate to dispose of, as dicta, the alternative second contention that, in any event, La.R.S. 23:1061 was not intended to prevent injured employees of a contractor from recovering in tort against a negligent principal. The intent of this statutory provision was simply to afford an injured employee an alternative remedy in compensation against a principal, who is entitled to indemnification from the true employer of the injured workman. When in fact the true employer is responsible in compensation and is solvent and insured, then the principal has no compensation liability and he is not entitled to rely upon the compensation act (designed to protect the employee, not a third person tort feasor) as exempting him from liability under the exclusive-remedy provision of the compensation act, La.R.S. 23:1032. See the excellent concurring opinion of Judge Lemmon in Broussard v. Heebe's Bakery, Inc., 254 So.2d 284, at 288 (La.App.1971).
An erroneous prior judge-made interpretation of legislation is always subject to judicial correction. Since judges made the mistake, they can correct it. The traditional duty of the judge in a civil-law jurisdiction such as Louisiana is to be bound by the legislative intent and the legislation itself, not by any erroneous precedent enunciated by the former or present judges of the court. See Techniques of Judicial Interpretation in Louisiana, 22 La.L.Rev. 727, esp. 743-46 (1962).
However, since in fact Heebe is not a principal, it is unnecessary for us to decide this issue in the present proceeding. I therefore concur in the majority opinion insofar as its scholarly discussion in support of the holding that no principal-contractor relationship exists under the present facts between Wolf and Heebe.
NOTES
[1] This section reads:

"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
"Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."
[2] Amicus Curiae in this case, Louisiana Trial Lawyers Association, has filed a brief in this Court and presented oral arguments through one of its members.
[3] It is because of the disagreement as to the relationship resulting from these facts that plaintiff contends defendants were not entitled to summary judgment. See, Cole v. Chevron Chemical Co., 5 Cir., 427 F.2d 390.
[4] This is not out of the ordinary in cases of vendor-vendee. Cognizance can be taken of the fact that dress manufacturers frequently furnish special store labels in dresses they sell to designated retail stores. The same is true of shoe manufacturers, who furnish specialized inner sole markings at the request of the purchaser.
[5] This evidences the fact that such a specialized baking and wrapping service was readily available for purchase on the open market, and, indeed, was so prevalent as to constitute "standard practice."
[6] See, also, 71 C.J. 485, Section 210, particularly footnote No. 49; Bendure v. Great Lakes Pipe Line Co., 199 Kan. 696, 433 P.2d 558 (company procuring steel beams held to be purchaser and liable in tort if its negligence contributed to injury of driver delivering beams at its plant); Hacker v. Brookover Feed Yard, Inc., 202 Kan. 582, 451 P.2d 506 (a "contract feeder" of cattle who raised some feed but secured most from farmers held a purchaser and liable in tort if negligence contributed to injury of driver delivering silage at "feeder's" silo); and Doyle v. Missouri Valley Constructors, D.C., 288 F.Supp. 121 (contractor securing ready-mix concrete held a purchaser and subject to tort action by driver of concrete company delivering mixture to job site).