HOOD, Judge.
This is a workmen’s compensation suit filed by Johnny Sam Andrus against W. A. Farrar and G. L. Malone. Judgment was rendered by the trial court condemning Farrar to pay compensation benefits to plaintiff from May 24 to November 30, 1962, but rejecting plaintiff’s demands against Malone. Plaintiff has appealed.
On May 24, 1962, plaintiff fell and struck his back on a sharp piece of wood while he was working as a laborer for Farrar in cutting and hauling pulpwood. As a result of that fall, he sustained a back sprain which disabled him from the date of the accident until November 30, 1962. No question is raised here as to the extent of plaintiff’s disability, as to the amount of compensation due him, or as to the liability of Far-rar to plaintiff for such benefits. The only issue presented is whether Malone is also liable to plaintiff under the Louisiana Workmen’s Compensation Act.
The business relationship which existed between Malone and Farrar is set out in some detail in the case of Joseph Guillory v. Farrar, et al., 182 So.2d 158, which case is being decided by us on this date. The facts in the Guillory case are similar to those presented here, and we refer to the opinion handed down in that suit for a fuller explanation of the manner in which Malone and Farrar conducted their respective businesses and of the relationship which existed between them.
At the time the accident involved in this suit occurred, Farrar was cutting timber from lands located in St. Landry Parish and owned by Joe Elder. He was delivering the timber which was being cut that day to Malone’s wood yard in St. Francis-ville, Louisiana.
Sometime prior to the date of the accident, Farrar contacted a Mr. Ellis, who was acting as agent for Joe Elder, and he made an offer to Ellis for the right to cut and remove certain types of timber from the Elder tract. Shortly after that offer was made, Ellis, acting as agent for Elder, entered into an agreement with Farrar to the effect that Farrar could cut and remove certain types of wood from the Elder tract for a consideration of $1.50 per cord, provided that Malone would assure the landowner that he would withhold that amount from the payments which thereafter would become due Farrar for wood cut from that tract and sold to Malone, and that Malone would remit the stumpage so withheld directly to Elder. Farrar then asked Malone to contact Elder and give him that assurance. In compliance with that request, Malone telephoned Elder and assured him that stumpage in the amount of $1.50 per cord would be withheld from the purchase price of all loads of wood which Farrar cut from the Elder tract and delivered to Malone, and that the stumpage so withheld would be paid directly to Elder. Malone then informed Farrar that this assurance had been given to Elder, and Ellis informed Farrar that he could proceed to cut and haul timber from that tract. Farrar began cutting wood from the Elder tract, and plaintiff was injured while these operations were being conducted.
Malone paid a total of $14.00 per cord for the wood cut and hauled' from that tract. From that amount, $1.50 was withheld for stumpage and paid to Elder. The remaining $12.50 per cord was paid to Farrar, there being no other deductions or amounts withheld from the purchase price.
Other pulpwood producers besides Far-rar also cut and hauled wood from the same tract of land at the same time. When loads of wood which had been cut from that land were delivered to Malone, he withheld stumpage in the same manner as he withheld it from Farrar, and he paid the withheld portions directly to Elder. Farrar received no part of the amounts which Malone paid to or withheld from other producers who delivered pulpwood which had been cut from the- Elder tract.
Farrar was cutting and hauling box elder and other types of hardwood from this tract *164 of land. Malone was the only wood broker in that area who was buying that type of wood. Farrar explained that the reason why Elder wanted assurance from Malone that stumpage would be withheld was because he knew that Malone was the only broker who was buying box elder wood at that time, and thus Farrar had no other market for this wood.
As we noted in the Joseph Guillory case, supra, Malone had sold a truck to Farrar on credit, and he also had guaranteed the purchase price of a Caterpillar tractor which Farrar had purchased before the accident occurred. Farrar eventually paid for the truck and acquired title to it. He did not pay for the Catterpillar, and by agreement between the parties Malone took over the ownership of that machine. Also, as in the Guillory case, the plaintiff in this suit was hired by Farrar, and not by Malone.
Plaintiff contends primarily that Malone controlled the cutting and hauling operations in which plaintiff and Farrar were engaged, and thus plaintiff must be regarded as an employee of Malone at the time the accident occurred. He takes the position, alternatively, that the relationship of principal and contractor existed between Malone and Farrar, and that plaintiff, as an emplo}ree of Farrar, is entitled to recover compensation benefits from Malone.
We held in the Joseph Guillory case, supra, where the facts were almost identical to those presented here, that a vendor-vendee relationship existed between Far-rar and Malone. Plaintiff contends, however, that in the instant suit, unlike the facts in the Guillory case, Malone had personally negotiated with the landowner for the timber, that Farrar had had no contact at all with Elder, that all of the wood which Farrar cut from the Elder tract was hauled to Malone’s wood yard, and that other producers also cut timber from the same land and Farrar received no consideration for the timber which had been cut. It is argued that these facts show that the right to cut timber from the Elder tract actually became vested in Malone, rather than Farrar, that Malone thus controlled the timber on Elder’s land, and that Farrar was cutting and hauling it as an employee or as a contractor of Malone.
We cannot agree with plaintiff in his interpretation of the evidence. The telephone call which Malone made to Elder was made at the request of Farrar, and it was made solely for the purpose of assuring Elder that stumpage would be withheld and paid directly to him, pursuant to his agreement with Farrar. The evidence shows that it was customary for the wood broker to withhold stumpage and pay it directly to the landowner, when a request to that effect was made either by the landowner or by the producer. We see nothing irregular or suspicious about the contract which Malone had with Elder, and in our opinion the fact that Malone did call the landowner for that purpose does not warrant a conclusion that Malone, instead of Farrar, acquired the timber rights from Elder.
Plaintiff urges that the fact that Farrar did not talk to the landowner personally is a further indication that Farrar actually did not acquire the timber rights. We do not attach any such significance to that circumstance. While it is true that Farrar did not contact Elder personally, he did talk to Elder’s agent, and an agreement was entered into between Farrar and Elder, through the latter’s agent, whereby Farrar acquired the right to cut, haul and sell wood from the Elder tract.
Plaintiff contends that all of the wood cut from the Elder tract was delivered to Malone’s wood yard, and he argues that this circumstance shows that Malone, rather than Farrar, owned the timber rights on that tract. We find no merit to this argument. In the first place, we do not interpret the evidence as showing that all of the timber cut from this tract was delivered to Malone. If we assume that all of that wood was delivered to Malone, however, then the record does not show that Farrar was obligated under any agreement *165 to deliver it exclusively to Malone. And, if we assume further that Farrar was under such an obligation, it is as logical to assume that such a requirement was made by the landowner as by Malone. Even if we should assume facts most favorable to plaintiff, therefore, the evidence does not indicate that Malone owned or controlled the timber rights on the Elder tract.
We also are unable to agree with plaintiff’s final contention that since other producers cut timber from the Elder tract at the same time, without Farrar receiving any remuneration for it, an inference is justified that Farrar did not own the timber rights. This circumstance tends to show that Farrar did not have the exclusive right to cut timber from this tract, but it does not show that Malone had any such right.
Malone and Farrar both testified that the timber rights on the Elder tract were acquired by Farrar and that Malone acquired no such rights. Neither the landowner nor his agent, Ellis, were called to testify, and the evidence thus is uncontradicted that Farrar owned the timber rights and that he was not controlled by Malone in his cutting and hauling operations. We find nothing in the record which indicates subterfuge or fraud, and nothing which causes us to view the transactions relating to the timber rights on the Elder tract with suspicion.
We think the principles which we applied in the Joseph Guillory case, supra, are applicable here. Our consideration of the evidence in the instant suit convinces us that neither an employer-employee nor a principal-contractor relationship existed between Malone and Farrar, as contended by plaintiff. We find, as the trial judge apparently did, that a vendor-vendee relationship existed between Farrar and Malone, and that Malone thus is not liable to plaintiff under the workmen’s compensation law. See also: Jack v. Aetna Casualty & Surety Co., La.App. 3 Cir., 168 So.2d 476; Cerie v. Malone, La.App. 3 Cir., 125 So.2d 254; Smith v. Crossett Lumber Co., La.App. 2 Cir., 72 So.2d 895; Garner v. Southern Pulpwood Ins. Co., La.App. 3 Cir., 149 So.2d 157; Bryant v. United States Fidelity & Guaranty Co., La.App. 3 Cir., 163 So.2d 95; Richardson v. Jones, La.App. 3 Cir., 163 So.2d 119; and Hadnot v. Southern Casualty Insurance Co., La.App. 3 Cir., 166 So.2d 15.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.