477 F.2d 361
 William F. COLE, Plaintiff-Appellant,
v.
CHEVRON CHEMICAL COMPANY-ORONITE DIVISION,
Defendant-Appellee, MECHANICAL CONTRACTING
ENGINEERS, INC., and Liberty Mutual
Insurance Company, Third Party
Defendants-Appellees-
Appellants.
 No. 72-1025.
 United States Court of Appeals,
Fifth Circuit.
 April 23, 1973.
Rehearing and Rehearing En Banc Denied June 19, 1973.
 
 George J. Kambur, Clark A. Richard, New Orleans, La., for plaintiff-appellant.
 Lloyd C. Melancon, New Orleans, La., for Chevron Chemical Co.
 John V. Baus, New Orleans, La., for Mechanical Contracting Engineers, Inc., and Liberty Mutual Ins. Co.
 Before GEWIN, GOLDBERG and DYER, Circuit Judges.
 DYER, Circuit Judge:
 
 
 1
 Two questions are presented on appeal in this Louisiana-based diversity case: (1) whether the work that Mechanical Contracting Engineers, Inc., performed for Chevron at its plant in Belle Chase, Louisiana, was, as a matter of law, part of Chevron's "trade, business, or occupation" for the purposes of establishing coverage under Sec. 6 of the Louisiana Workmen's Compensation Statute, La.Rev.Stat.Ann. Sec. 23:1061;[1] and (2) whether in Louisiana, an indemnity agreement that does not expressly specify the indemnitor's intent to indemnify for the indemnitee's own negligence is enforceable where the damage is caused by the concurrent negligence of the indemnitee and indemnitor, rather than by the sole negligence of the indemnitee. We affirm in part and reverse in part.
 
 
 2
 Mechanical was hired by Chevron to do general welding and pipe fitting work at its Belle Chase plant. The job primarily consisted of cutting and removing old pipes, valves, gratings, and other refinery paraphernalia to make way for construction of additional facilities and installation of new equipment. In February 1968 Cole, a welder employed by Mechanical for the Chevron job, was injured during the course of his employment at the Belle Chase plant. He sued Chevron under the general negligence law of Louisiana for damages he sustained as a result of his slipping and falling in a puddle of oil while he was helping a fellow employee carry a heavy piece of steel grating. The puddle was comprised of both "old" and "new" oil; the new oil was spilled when Mechanical's welders cut pipes containing the oil, but the old oil had been left from Chevron's earlier operations.
 
 
 3
 Cole contended that Chevron was negligent in that it breached the duty it owed him as a Mechanical employee to remove old oil from the floor before Mechanical began working in the area and that Chevron's firewatcher breached his duty to clean up the spilled new oil. Chevron countered that it was Cole's "statutory employer" within the meaning of La.Rev.Stat.Ann. Sec. 23:1061 and that therefore Cole's exclusive remedy for his injury was workmen's compensation since under Louisiana law a workman cannot maintain a tort action against his statutory employer. La.Rev.Stat.Ann. Sec. 23:1032. In response to Cole's claim, Chevron also asserted a third-party complaint against Mechanical and its insurer, Liberty Mutual Insurance Company, on the basis of a written indemnity agreement between Chevron and Mechanical for the work being performed by Mechanical when Cole was injured.
 
 
 4
 Prior to trial Chevron filed a motion for summary judgment supported by affidavits; the motion was granted and the suit dismissed. On appeal, this Court reversed that judgment and remanded the cause for trial on the merits because material factual issues remained to be tried. Cole v. Chevron Chemical Co., 5 Cir. 1970, 427 F.2d 390. In so holding the Court pointed out that:
 
 
 5
 In cases such as Arnold v. Shell Oil Company, 5 Cir., 1969, 419 F.2d 43, and Allen v. United States Fire Insurance Company, 222 So.2d 887 (La.Ct.App.1969), the factual picture of the principal employer's business operations, and of the part the activity in issue played in those operations, was well defined. Here, on the other hand, the picture of Chevchem's operations at its Oronite Division Plant is not clear. That Chevchem is engaged in the production of petro-chemicals derived from hydrocarbons is not conclusive of the issue whether all types of welding work performed at its Oronite Division Plant-demolition and construction work, as well as "repair" and "maintenance" work-are part of the "regular operations" at the Plant. Further factual development is necessary. . . .
 
 
 6
 427 F.2d at 394.
 
 
 7
 On remand, Cole's suit against Chevron was tried in two parts. The first day of testimony related only to the issue of whether Chevron was the statutory employer of Cole. This issue was submitted to the jury; it determined that the work for which Chevron contracted with Mechanical was not part of Chevron's "trade, business, or occupation." After the second phase of the trial was completed on the following day, a special verdict was rendered. The jury found that Cole was injured, that his injury was caused by the negligence of Chevron, that Cole was not contributorily negligent, and that he was entitled to damages of $67,500.
 
 
 8
 Subsequently, Chevron filed a motion for a judgment notwithstanding the verdict and alternatively for a new trial. The district court granted the motion for a judgment N.O.V. and conditionally granted a new trial, contingent on the judgment N.O.V. not being affirmed on appeal. In the meantime, Chevron's indemnity action against Mechanical was tried without a jury, and the district court, 334 F.Supp. 263, held that Chevron was entitled to indemnification because Mechanical had been concurrently negligent in that it had a contractual obligation to keep "a competent man in the immediate vicinity . . . to supervise the work" and its personnel failed to call the spillage of new oil to the attention of Chevron's firewatcher. Reasoning that Cole's injuries were therefore caused "directly or indirectly" (the words of the indemnity agreement) by Mechanical, the court concluded that Mechanical was bound to indemnify Chevron for any damages that it might owe Cole as well as for its costs of defense, which were stipulated to be $6,915. This appeal by Cole on the statutory employer question and by Mechanical on the indemnity issue ensued.
 
 
 9
 Was the Work Performed by Mechanical and Cole Part of
 
 
 10
 Chevron's "Trade, Business, or Occupation"?
 
 
 11
 Section 6 of the Louisiana Workmen's Compensation Statute, La. Rev.Stat.Ann. Sec. 23:1061, provides that any person (referred to as a principal) who contracts out work which is a part of his "trade, business, or occupation" is liable for workmen's compensation to any of the contractor's employees who are injured while engaged in such work to the same extent as if the contractor's injured employee were one of the principal's own employees. In other words, under certain circumstances, the principal is considered to be the statutory employer of the independent contractor's employees for the purpose of establishing coverage under the Workmen's Compensation Statute. The purpose of this provision is to prevent the principal from evading his workmen's compensation responsibility by interposing an independent contractor between himself and employees who are actually utilized in performing a part of the principal's "trade, business, or occupation." Cole v. Chevron Chemical Co., 5 Cir. 1970, 427 F.2d 390, 392; Arnold v. Shell Oil Co., 5 Cir. 1969, 419 F.2d 43, 46. Section 23:1061 benefits the employees of the contractor when the contractor is financially impoverished, because the principal may be held liable for their workmen's compensation. "On the other hand, when the contractor is able to fulfill his compensation responsibilities, the provision operates to limit his employees to the maximum benefits payable under the Workmen's Compensation Statute, since the principal, as their 'statutory employer,' is, like the contractor, immunized from tort liability to the employees by the exclusive-remedy provision of that act. La.Rev.Stat.Ann. Sec. 23:1032." Cole v. Chevron Chemical Co., supra at 392-393.
 
 
 12
 The standard for determining whether a given activity performed by an independent contractor is part of a principal's "trade, business, or occupation" is, to a degree, dependent upon the factual context of the case. The Louisiana courts in the early cases of Seabury v. Arkansas Natural Gas Corp., 1930, 14 La.App. 153, 127 So. 25, and Dandridge v. Fidelity & Casualty Co., La.App.1939, 192 So. 887, applied a two-pronged test based on business necessity and employment of similar workers. However, keeping in mind the policy that workmen's compensation law should be liberally construed regardless of whether the employer or employee is the party asserting coverage, the Louisiana courts in Turner v. Oliphant Oil Corp., La.App. 1940, 200 So. 513; Thibodaux v. Sun Oil Co., La.App.1949, 40 So.2d 761; Doucet v. W.H.C., Inc., La.App.1968, 212 So.2d 267; and Allen v. United States Fire-Insurance Co., La.App.1969, 222 So.2d 887, retreated somewhat from this two-pronged test. In these cases, the courts held that the fact that the principal did not have any employees engaged in a similar activity was not controlling where the work contracted out was so necessary to the principal's operations that, if it were not performed by the independent contractor, the principal would have to hire workers of its own to perform the task.
 
 
 13
 In Arnold v. Shell Oil Co., supra, the Fifth Circuit was confronted by an analogous factual situation. An employee of an independent contractor was injured while repairing a Shell heater-treater, which is a device used to separate sand and salt water from freshly mined oil. Shell had no workers employed on this job and, in fact, had always contracted out its heater-treater maintenance work. It was undisputed, however, that the proper functioning of the heater-treater is necessary to the efficient operation of an integrated oil company, because the salt water and sand would corrode the pipeline if not removed before pumping the oil to the refinery. Based on these facts, the Court held that Shell was the injured employee's statutory employer as a matter of law, concluding that to determine if an activity is part of a principal's "trade, business, or occupation" for purposes of Louisiana's Workmen's Compensation Statute, the proper test is "whether the particular activity is essential to the business." In so holding, the Court relied heavily on the rationale of the latter line of Louisiana cases that under such circumstances, the "fact that the employer or the industry as a whole always contracts out the activity is not controlling." 419 F.2d at 50.
 
 
 14
 Likewise, the panel of this Court that originally considered the case sub judice when it was on appeal from the entry of summary judgment pointed out that similarly not controlling is the fact that the principal hires employees of his own to do work related to the activity being performed by the contractor's employees. "Instead, the decisive factors are the nature of the activity being contracted out, the nature of the principal employer's business, and the relationship between the particular activity and the broader business operation." Cole v. Chevron Chemical Co., supra at 394. Although the employment of similar workers is not controlling, where a principal in fact acts as his own general contractor or has a number of his own employees regularly performing a task substantially similar to the activity which he contracts out, the principal thereby affords a definite indication that the work engaged in by the contractor's employees is part of his own trade or business. See La.Rev.Stat.Ann. Sec. 23:1061, comment at 489-490; cf. Lutz v. Long-Bell Lumber Sales Corp., La.App.1934, 154 So. 645. See also Horrell v. Gulf & Valley Cotton Oil Co., 1930, 15 La.App. 603, 131 So. 709. Indeed, in the recent case of Doss v. American Ventures, Inc., 1972, 261 La. 920, 261 So.2d 615, the Louisiana Supreme Court held that American, the owner-lessor of a building that was nearly destroyed by a hurricane, was liable for workmen's compensation to the injured employee of a contractor hired to rebuild the structure, on the ground that American was engaged in the construction business when the employee was injured since, at the time of the injury, American was acting as its own general contractor for the project. See also Gray v. Louisiana Power and Light Co., La.App.1971, 247 So.2d 137, where the court held that, because LP&L acted as its own general contractor in erecting towers for power transmission lines, it was the statutory employer of an injured worker employed by a sub-contractor hired to construct the foundation on which to erect the towers.
 
 
 15
 In the present case, the general welding and pipe fitting work that Chevron hired Mechanical to do and that Cole was performing when injured was part of a complex plan of expansion and renovation which Chevron established soon after the Belle Chase plant was opened in 1943 and which proceeded rather continuously over the following 26 years, dependent only on economic activity. Over 100 tanks, innumerable pipes, and various types of other equipment for producing petro-chemicals were added, and the value of the plant was increased some 25 times.
 
 
 16
 Significantly, the expansion of the Belle Chase facilities was always directly supervised by Chevron itself. The company employed a full-time maintenance crew of 35 men, each of whom was trained as welders and pipefitters and cross-trained as carpenters and electricians. Depending upon the size of a particular project and the workload of the maintenance crew at the time, Chevron would either have its own staff do the construction and renovation work, or it would contract out part or all of the work. However, even when the work was contracted out, Chevron acted as its own general contractor. Chevron's engineers prepared the blueprints, planned the schedule for each project, coordinated the work schedules among the various projects, and as the work progressed on each project intermittently made quality control tests.
 
 
 17
 Below, the district court granted a judgment N.O.V. in favor of Chevron on the basis that there was no substantial evidence to support the jury's verdict. The proper standard for granting a directed verdict or judgment N.O.V., and for reviewing the granting or denial of such motions on appeal, has been exhaustively explained in Boeing Co. v. Shipman, 5 Cir.1969, 411 F.2d 365, 374-376. Basically, granting the motions is proper when, viewing all of the evidence and all of the reasonable inferences that can be drawn therefrom most favorably toward the party opposed to the motion but without weighing the evidence or inferences and without determining the credibility of the witnesses, the facts and legitimate inferences point so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary decision.
 
 
 18
 Applying these principles to the instant case, we determine that the granting of Chevron's motion for a judgment N.O.V. by the district court was proper. The uncontroverted evidence conclusively established that a number of Chevron's full-time employees were regularly engaged in the same type of work as being performed by Mechanical and Cole, that Chevron had been in the process of modernizing and expanding its Belle Chase facilities on a continuous basis for over a quarter century, that throughout this period Chevron had as a matter of course acted as its own general contractor for the work which its own maintenance crew did not have the time to handle, and that Mechanical was but a sub-contractor on this project. Thus, as in Owen v. Kaiser Aluminum and Chemical Corp., 5 Cir.1969, 417 F.2d 303, it is clear that La.Rev.Stat.Ann. Sec. 23:1061 applies.
 
 
 19
 Moreover, unlike the sugar refinery in Moak v. Link-Belt Co., La.App.1970, 229 So.2d 395, the evidence here shows that Chevron could not have continued to operate its business indefinitely without completing the expansion and renovation work undertaken by Mechanical. The uncontroverted testimony of the operations manager of the Belle Chase plant, Mr. Estopinnal, which was the only relevant evidence regarding the necessity or essentiality of Mechanical's work for Chevron, was to the effect that, although Chevron presumably would have been able to continue its operations at the plant for the time being without the work being done, the modernization and expansion of the Belle Chase plant would somehow have been finished-even if Mechanical had refused to perform under the terms of the contract-because the work was essential to the plant's continued efficient and competitive operation.
 
 
 20
 In short, we agree with the district court that there was no substantial evidence to support the jury's finding that the work which Mechanical was hired to do was not part of Chevron's "trade, business, or occupation." Even when the record is viewed in the light most favorable to Cole, the evidence that Chevron is Cole's statutory employer is completely overwhelming; we cannot conceive how reasonable men could reach a different conclusion.
 
 Contractual Indemnity
 
 21
 The only other issue on appeal, involving Chevron's third-party complaint against Mechanical, is whether under Louisiana law indemnity is owed when the indemnitee is wholly or partially at fault and the indemnity agreement fails to expressly require indemnification for accidents resulting from the indemnitee's negligence. A careful review of the relevant Louisiana cases convinces us that indemnity is not owed in such a situation.
 
 
 22
 The pertinent contractual provision between Chevron and Mechanical was:
 
 
 23
 General Liability: CONTRACTOR shall indemnify and save COMPANY harmless from and against any and all loss, damage, injury, liability, and claims thereof for injuries to or death of persons, and all loss of or damage to property of others, resulting directly or indirectly from CONTRACTOR'S performance of this contract.
 
 
 24
 Based on a finding of concurrent negligence on the part of both the indemnitor, Mechanical, and the indemnitee, Chevron, the district court held that Chevron was entitled to indemnity under the agreement. Since Mechanical's negligence partially caused Cole's accident, the court reasoned that his consequent injuries were embraced by the phrase "resulting directly or indirectly from CONTRACTOR'S performance."
 
 
 25
 We disagree. Louisiana law is clearly to the effect that the failure of the parties to refer expressly to "negligence" in an indemnity contract is evidence of the parties intention not to provide indemnification for the indemnitee's negligent acts. Bagwell v. South Louisiana Electric Co-op Assoc., La. App.1969, 228 So.2d 555; Arnold v. Stupp Corp., La.App.1967, 205 So.2d 797; see Plantation Pipeline Co. v. Kaiser Aluminum and Chemical Corp., La. App.1969, 222 So.2d 905; Elephant, Inc. v. Hartford Accident & Indemnity Co., La.App.1968, 216 So.2d 837; Brady v. American Insurance Co., La.App.1967, 198 So.2d 907. The parties' clear and unequivocal intent to indemnify against damages caused solely by the indemnitee's own negligence must be expressly articulated by specific reference to "negligence." Otherwise, the presumption is that the indemnification is applicable only to vicarious responsibility of the indemnitee resulting from negligent acts of the indemnitor. Bagwell v. South Louisiana Electric Co-op Assoc., supra; Arnold v. Stupp Corp., supra; Garsalitz v. Olin Mathieson Chemical Corp., 5 Cir.1970, 429 F.2d 1033; and Grigsby v. Coastal Marine Service of Texas, Inc., 5 Cir.1969, 412 F.2d 1011. Compare Jennings v. Ralston Purina Co., La.App. 1967, 201 So.2d 168.
 
 
 26
 These same precepts and presumptions are equally applicable where the damage is caused by the concurrent negligence of the indemnitee and indemnitor, rather than by the indemnitee's sole negligence. In the recent case of Strickland v. Nutt, La.App.1972, 264 So.2d 317, which involved a finding of concurrent negligence and an indemnity agreement remarkably similar to the one in the case sub judice, the Louisiana court specifically rejected the district court's decision below in the present case, Cole v. Chevron Chemical Co., E.D. La.1971, 334 F.Supp. 263, and denied indemnity.
 
 
 27
 We reject the proposition that indemnity contracts should be interpreted differently depending on whether the indemnitee is solely negligent or there is concurrent negligence on the part of both indemnitee and indemnitor. We are aware of the case of Cole v. Chevron Chemical Company-Oronite Division, 334 F.Supp. 263 (U.S.D.C., E.D.La.1971) wherein the Federal District Judge indicated that the holding of Jennings v. Ralston Purina Co., 201 So.2d 168 (La.App.2d Cir.1967) and Arnold v. Stupp Corp., 205 So.2d 797 (La.App.1st Cir.1967) were applicable only where there was sole negligence on the part of the indemnitee. We agree rather with the language of the U.S. Fifth Circuit Court of Appeals in Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge, 424 F.2d 684 (1970) that,
 
 
 28
 "Although in Batson-Cook [Batson-Cook Co. v. Industrial Steel Erectors, 5 Cir. 1958, 257 F.2d 410] the indemnitor was not negligent and the damage was caused solely by the negligence of the indemnitee, the rule requiring specificity of the intent to indemnify for the indemnitee's own negligence is equally applicable in situations where, as here, the concurring negligence of the indemnitee and indemnitor causes the damage. See United States v. Seckinger, 5 Cir.1969, 408 F.2d 146, reversed on other grounds 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (October 13, 1969)."
 
 
 29
 We are of the opinion that the above language sets forth the better rule for interpreting indemnity agreements and that the Courts of this state should adopt that rule. . . .
 
 
 30
 264 So.2d at 323.
 
 
 31
 Accordingly, because the jury found that Cole's injuries were proximately caused by Chevron's negligence and since the indemnity agreement does not use the talismanic word "negligence" or otherwise make unequivocally clear the parties' intent to indemnify for injuries caused, in part or in whole, by the negligence of the indemnitee, we conclude that Chevron is not entitled to recover under the indemnification provision of the contract.
 
 
 32
 The district court's judgment N.O.V. in favor of Chevron is affirmed. The judgment of the district court that Mechanical must indemnify Chevron for its costs of defense and for any damages owed to Cole as a result of the injuries he sustained at the Belle Chase plant in 1968 is reversed with directions to enter judgment for Mechanical.
 
 
 33
 Affirmed in part and reversed in part.
 
 
 
 [1]
 La.Rev.Stat. Sec. 23:1061 provides:
 Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
 Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.