**Carlton H. FREEMAN, Plaintiff-Appellant,**

v.

**CHEVRON OIL COMPANY, Defendant-Third Party Plaintiff-Appellee,**

**Herb's Welding, Inc., et al., Intervenor,**

**The North West Insurance Company, Third-Party Defendants.**

**No. 74–2445.**

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1975.

Rehearing Denied Sept. 4, 1975.

Joseph L. Waitz, Houma, La., for plaintiff-appellant.

William A. Porteous, III, New Orleans, La., for Chevron Oil Co., Herb's Welding and others.

Abraham Gerber, New Orleans, La., for intervenor.

H. Edward Weidlich, Jr., New Orleans, La., for Employers Surplus.

Before GIBSON *, THORNBERRY and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

The question for decision is whether the district court erred in granting defendant's motion for judgment n. o. v. by its ruling that defendant was the

* Of the Eighth Circuit, sitting by designation.

"statutory employer" of plaintiff under LSA–R.S. 23:1061[1] and consequently that plaintiff's exclusive remedy in his suit for damages for personal injuries, was under the Louisiana Workmen's Compensation Statute, thereby overturning a jury verdict of $26,700 in damages in favor of plaintiff.

This suit arises out of an accident which occurred on June 26, 1972, on a fixed drilling platform in the Gulf of Mexico, 2.9 miles from the Louisiana coastline. Herb's Welding, Inc., an independent contractor, was performing certain work for Chevron Oil Company on a drilling platform of the company, under a written contract. The contract is not in evidence but according to Chevron's third party complaint (para. 6), "Herb's agreed and contracted as an expert, professional independent contractor to furnish personnel, services and supplies to Chevroil [a trade name used by Chevron] . . . ." However, it is clear from the testimony that on this occasion Herb's employees were engaged in the installation of a sewerage plant or system for the bunkhouse on the platform for pollution control. Plaintiff Carlton H. Freeman, a welder employed by Herb's, was injured on the platform when an oxygen cylinder was dropped on his foot. At the time Freeman was injured he and his fellow employees were "putting in a septic tank" to take care of the sewerage from the bunkhouse, and Freeman was welding the septic tank. He filed a di-versity tort action under LSA–C.C. Article 2315, the general tort statute of Louisiana, for damages for personal injuries, alleging causal negligence of Chevron.[2]

By special written interrogatories the jury was asked first to decide whether plaintiff was engaged in "performing the trade, business, or occupation of the defendant Chevron Oil Company." An affirmative answer would have established Chevron as the "principal" or "statutory employer" of plaintiff under LSA–R.S. 23:1061, thereby relegating plaintiff to Louisiana workmen's compensation as his exclusive remedy. The jury answered, however, in the negative, that Freeman was not so engaged and rendered a verdict in his favor for damages in the sum of $26,700, finding that Chevron's negligence was the proximate cause of plaintiff's injury.

The district court entered a judgment on the verdict,[3] but subsequently on motion by Chevron granted a judgment n. o. v. in Chevron's favor, vacating and setting aside the former judgment, and dismissing plaintiff's suit. In his memorandum of reasons supporting the judgment n. o. v. the district judge held that the finding by the jury that plaintiff was not engaged in performing the trade, business or occupation of the defendant was erroneous and contrary to the law and evidence.

Plaintiff contends on appeal that the district court erred in overturning the

---

1. LSA–R.S. 23:1061 provides in pertinent part:

 "Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him . . . ."

2. Chevron answered, denying negligence and affirmatively pleading assumption of risk and sole or contributory negligence of plaintiff. The North West Insurance Company intervened as subrogee to plaintiff's right for compensation paid to him under the Longshoremen's and Harbor Workers' Compensation Act under its policy of insurance to Herb's Welding, Inc. Chevron subsequently filed a third party complaint for contribution, damages and indemnity against Herb's Welding, Inc. and its liability insurers. Only the principal action between Freeman and Chevron was submitted to the jury.

3. The judgment recognized the right of the compensation insurer to reimbursement. The district court also entered a judgment in favor of Chevron Oil and against the third party defendants in the sum of $26,700.

jury verdict and that the "statutory employer" defense under LSA–R.S. 23:1061 was neither applicable nor properly before the court. We agree with appellant and therefore reverse and vacate the judgment n. o. v. Accordingly, we direct that the original judgment in the sum of $26,700 be reinstated.

Rule 8(c), Fed.R.Civ.P., requires that in pleading to a preceding pleading, a party shall set forth affirmatively certain enumerated defenses "and any other matter constituting an avoidance or affirmative defense." "Whether a particular matter is to be regarded as an affirmative defense is to be determined by state law." Seal v. Industrial Electric, Inc., 5 Cir., 1966, 362 F.2d 788, 789. In *Seal*, as here, the defense asserted was that plaintiff's exclusive remedy was workmen's compensation. Seal brought an action against his employer, Industrial Electric, Inc., alleging an assault and injury by employer's foreman. Industrial filed a motion to dismiss on the ground that the exclusive remedy of Seal was under the Mississippi Workmen's Compensation Act. The motion was granted and Seal appealed. We reversed and remanded, concluding, after examining Mississippi law, that "[T]he employer was required to assert as an affirmative defense that the assault upon the appellant was one which arose out of and in the course of employment within the coverage of the Mississippi Act." 362 F.2d at 789.

■ Under Louisiana law the plea of "statutory employer" under the provisions of LSA–R.S. 23:1061, whether it be the basis of a suit or a defense, is an affirmative plea, and the burden of proof is upon the party asserting it. James v. Lykes Bros. S. S. Co., La.App., 1965, 175 So.2d 444, 448; Duplechin v. Pittsburgh Plate Glass Company, La. App., 1972, 265 So.2d 787, 790. *Cf.* Seal v. Industrial Electric, Inc., *supra*, and Roelofs v. Lewals, Inc., W.D.La., 1972, 344 F.Supp. 1003, 1010 n.10.

In the present case, Chevron failed to plead the affirmative defense of "statutory employer," as required by Rule 8(c), Fed.R.Civ.P. The answer and the third party complaint of Chevron show that it relied instead on a general denial of negligence, on allegations that plaintiff's own negligence caused the accident, and that there was a breach by Herb's Welding, Inc. of its contractual warranty with Chevron. The record discloses that until the actual time of trial, Chevron did not regard itself as the employer of Freeman. As we have noted previously, Chevron alleged in its third party complaint that under its written contract Herb's agreed as an independent contractor to furnish personnel, and of course plaintiff Freeman was an employee of Herb's. Further indicative of Chevron's intention to disclaim Freeman as its employee is the following language in the pretrial order, para. 6b:

"Defendant, Chevron Oil Corporation will contend that on January 26, 1972 Carlton Freeman was an employee of Herb's Welding. . . ."

■ Listed as a pending motion in the pretrial order is the following: "Chevron Oil Corporation will bring a motion to dismiss and/or motion for summary judgment based upon the fact that the compensation act afforded plaintiff is [his] exclusive remedy." However, defendant failed to file either motion. Moreover, as already noted, plaintiff was at the time receiving Longshoremen and Harbor Workers' compensation from Herb's Welding, Inc. The asserted intention of Chevron to file these motions can hardly be presumed to place plaintiff on notice that the statutory-employer defense under the Louisiana Act was contemplated. On the morning of trial counsel for plaintiff was informed that Chevron would urge the defense. Timely objection was overruled by the district court, erroneously we believe, on the basis that plaintiff had ample notice of this defense in the pretrial order where it was stated that Chevron would bring a motion to dismiss based upon the fact that compensation was plaintiff's exclusive remedy. Such a motion, as we have noted, was never filed. While there is some indication in the record that the

district judge believed that plaintiff desired to proceed with the trial regardless, instead of attempting to obtain a continuance, the transcript shows that counsel for plaintiff vigorously and repeatedly throughout the entire trial protested the introduction of evidence by Chevron pertaining to the statutory-employer defense.[4] But even if the defendant Chevron had pled an affirmative defense, as required by the Federal Rules of Civil Procedure and local law, it must also prove the defense as well.[5] This defendant failed to do.

The district court held in granting judgment n. o. v. that Chevron was in the business of drilling for offshore oil, that Freeman was assigned the job of installing pollution control equipment on the Chevron rig, and that "Clearly, the evidence presented at trial forces the conclusion that the activity being performed by the plaintiff was 'essential' to Chevron's 'trade, business, or occupation.' The defendant Chevron, therefore, was necessarily the plaintiff's statutory employer." The district judge cited as authority for his holding our decisions in Arnold v. Shell Oil Company, 5 Cir., 1969, 419 F.2d 43; Cole v. Chevron Chemical Company-Oronite Division, 5 Cir., 1973, 477 F.2d 361; and Duhon v. Texaco, Inc., 5 Cir., 1974, 490 F.2d 91. In our view, after careful consideration of the record, we find that defendant failed to meet the proper test and that the district judge was in error in concluding that it did.

■ We have pointed out that the evidence shows that plaintiff and his co-workers from Herb's were installing a pollution control sewerage system on the drilling platform. Defendant Chevron's burden was to submit by a preponderance of evidence proof that installation of the sewerage system was part of its regular trade, business or occupation, so closely related thereto as to become an integral part thereof, and that it was essential to Chevron's business. The only evidence which Chevron produced in this regard was the testimony of the witness, Waldo J. Baudouin, manager of the Property Tax and Insurance Division of Chevron and an attorney at law who had been employed by the company for 28 years. He testified that Chevron Oil Company is engaged in the exploration, production, transportation and refining of crude oil and gas; that the company is responsible for maintenance, erection, installation of buildings, structures and other facilities necessary to produce oil and gas; that these structures are maintained by Chevron and its personnel. He said that independent contractors such as Herb's Welding provide welders in his company's business who weld structures and construct facilities for the company in the Gulf of Mexico, and that the work is "absolutely necessary" to its business. However, he testified that construction of septic tanks for sewerage systems is not the principal trade or business of Chevron, but is "related to our business requirement that we construct all facilities necessary to the operation of the production of oil."

■ It was, of course, clear from the testimony of plaintiff and his co-workers, Lomax, the foreman, and Pierce, a welder, that at the time of plaintiff's injury they were installing the sewerage system on the platform and that plaintiff himself was engaged in welding a septic tank. We infer from this evidence that the sewerage system for pollution control was new, and that

---

4. The objections were made before the witnesses began to testify, and the district court so acknowledged (Tr. 87); several times during plaintiff's case while in recess, at which time counsel for plaintiff requested that his objection be made general without necessity for reiteration (Tr. 88, 89, 133, 134, 142); at the conclusion of plaintiff's case (Tr. 183–185), and at the conclusion of defendant's case (Tr. 265, 266).

5. See James v. Lykes Bros. S. S. Co., La.App., 1965, 175 So.2d 444; Duplechin v. Pittsburgh Plate Glass Company, La.App., 1972, 265 So.2d 787; Seal v. Industrial Electric, Inc., 5 Cir., 1966, 362 F.2d 788; and Roelofs v. Lewals, Inc., W.D.La., 1972, 344 F.Supp. 1003. .

this was therefore new construction. Defendant introduced no evidence to the contrary. Chevron contends that since it also employed welders on the platform, Herb's welders were engaged in the trade, business or occupation of Chevron. This is an erroneous conclusion. The issue is not whether Herb's employees were welders but whether the activity in which they were engaged, that of installing a sewerage system, was part of the trade, business or occupation of Chevron. Chevron produced no proof that its employees customarily engage in the installation of sewerage systems. The testimony of the Chevron witness, Baudouin, that the work being performed is "absolutely necessary" to his company's business, is not decisive because we infer that Chevron does not contract for work by independent contractors such as Herb's unless it is helpful and necessary to the operation of its business enterprise. *See* Cole v. Chevron Chemical Co., 5 Cir., 1970, 427 F.2d 390, 394. If every employee of such an independent contractor thereby becomes a statutory employee of Chevron, the concept of statutory employee would be expanded beyond practical limits and lead to ridiculous consequences. We decline to reach such an unsound result.

The jury was the trier of fact in this case and considered the matter under the trial court's detailed instructions. The court instructed the jury that the standard for determining the statutory employer defense was dependent upon "the factual context of the case" and was one which the jury "must resolve." The jury's answer to the specific interrogatory was that plaintiff was not engaged in performing the trade, business or occupation of Chevron Oil Company. The district court's holding that the jury's verdict should be set aside and should be entered for defendant was erroneous and not justified under the circumstances since the evidence of record does not indicate that "the facts and inferences point so strongly and overwhelmingly in favor of" defendant that "reasonable men could not arrive at a contrary verdict." *See* Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365, 374 (*en banc*).

In Arnold v. Shell Oil Co., *supra,* we interpreted the Louisiana decisions (by which we are bound in this diversity case under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)) to mean that in deciding whether an activity is part of an employer's trade or business for purposes of the Section 1061 defense, the test is whether the particular activity is essential to the business of the employer. We held that a person engaged in the work of replacing the internal tubes of a steam generator or "heater treater," a device used to separate sand and salt water from freshly mined oil, located on a Shell Oil Company facility, was a statutory employee under Section 1061 since the work being performed was part of Shell's "trade, business or occupation."

Shortly after our decision in Arnold v. Shell, *supra,* a Louisiana court of appeals decided Moak v. Link-Belt Company, La. App., 1969, 229 So.2d 395, where a sugar refining company [American] was held not to be the statutory employer of employees of Link-Belt Company which had contracted with the sugar refinery to install an automated conveyor system in the company's plant. In rejecting the Section 1061 defense asserted against employee suits for damages, the court held that the business of refining and packaging sugar could have continued indefinitely without reconstructing its conveying systems. (*Id.* at 412.) The court's opinion discloses that in American's granulator house, refined sugar was broken down, screen separated into various sizes, stored in bins and packaged for shipment or moved out for bulk shipment. Each line of bins had a continuous belt to which many rectangular buckets were attached, and these buckets scoop or receive sugar near the bottom of the elevator shaft and empty it at the top into other conveyor systems which deliver it to the packaging machines or the bulk shipment receptacle. (*Id.* at 401.) The court emphasized that

American's business was the operation of a sugar refinery, not redesign and reconstruction of the mechanical systems in the refinery. The court said (at 412):

American shows it has itself on other occasions done some of the same kind of work involved in the *installation* portion of Link-Belt's contract to design, fabricate, install, etc. American has in the past installed a conveyor system with its own labor, although not of this magnitude or complexity. The fully automated system Link-Belt was to provide was a new kind of system. The contract was not for mere maintenance or repair of an existing system, nor the mere replacing of an occasional conveyor screw or other parts of a system.

We agree with the trial judge that the evidence of American's prior activities does not show that the Link-Belt contract work was part of American's trade, business, or occupation within the meaning of LSA–R.S. 23:1061. American's business was the operation of a sugar refinery, and it so operated its business as to include necessary maintenance and repair and occasional replacement of equipment. Complete redesign and reconstruction of the mechanical systems is not part of the operation of a refinery, and American did not make it part of their operation.

"Whether contracted work is part of the 'operation' of the business (as opposed, e. g., to original construction or reconstruction of one of its facilities) has been utilized as a factor in determining whether the work is a part of the business within the meaning of § 1061 in Horrell v. Gulf & Valley Cotton Oil Co., 15 La.App. 603, 131 So. 709, and was emphasized as a determining factor in Finn v. Employers' Liability Assurance Corporation, La.App., 141 So.2d 852, 869. * * *" Doss v. American Ventures, Inc., 224 So.2d 470, 476 (La.App.1969), writ refused.

In Cole v. Chevron Chemical Company-Oronite Division, 5 Cir., 1973, 477 F.2d 361, the contractor [Mechanical] was hired by Chevron to do general welding and pipe fitting work. "The job primarily consisted of cutting and removing old pipes, valves, gratings, and other refinery paraphernalia to make way for construction of additional facilities and installation of new equipment." *Id.* at 363. The district judge granted Chevron's motion for judgment n. o. v. in a suit by one of Mechanical's employees for damages, and we affirmed, finding that there was no substantial evidence to support the jury's finding that the contractor's work was not part of Chevron's business. We recognized that "The standard for determining whether a given activity performed by an independent contractor is part of a principal's 'trade, business or occupation' is, to a degree, dependent upon the factual context of the case." *Id.* at 365. Although the essential-to-business test was one factor considered, it was not the only factor. Quoting from the panel's former opinion, we said that the "decisive factors are the nature of the activity being contracted out, the nature of the principal employer's business, and the relationship between the particular activity and the broader business operation." *Id.* at 366.

After this Court's decision in *Cole,* the Louisiana Supreme Court decided Reeves v. Louisiana and Arkansas Railway Company, La., 1973, 282 So.2d 503. In that case Humble Oil and Refining Company contracted for the construction of a new petroleum coking unit on its premises. A subcontractor's employee, a truck driver, parked his truck on a spur track while it was being loaded near the new coking unit, and he was injured when struck by a locomotive on the job site. He sued Humble and others for damages. Humble contended that the work performed by plaintiff's employer was part of the trade, business or occupation of Humble, and therefore that plaintiff's exclusive remedy, as its statutory employee, was Louisiana workmen's compensation. The district court dismissed plaintiff's suit and the dismissal was affirmed by the intermediate appellate court. The Louisiana Supreme Court re-

versed, holding in favor of the injured employee and rejecting the statutory employer defense. The court said:

> The evidence offered by Humble to support this special defense did not sustain its burden of proof. The work being done at the time was not part of its regular business. Humble is primarily an operating or refining company. It has never designed a coking unit or any comparable plant. It has neither the design capability nor the manpower availability for this type of work. Most of its new construction is let to independent contractors as in this case. The new coking unit was being built alongside the existing unit which had also been contracted with Foster Wheeler Corporation in 1962. A majority of the 1,200 employees in Humble's mechanical division are engaged in maintenance work.
>
> Thus it was not Humble's business practice to engage in new construction of this type and magnitude, nor does the record support a conclusion that this type work was customarily done by Humble or other employers similarly situated. The record does not support a conclusion that Humble is a statutory employer. See Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950) and Horrell v. Gulf & Valley Cotton Oil Co., Inc., 15 La.App. 603, 131 So. 709 (1930).

*Id.* at 508.

Significantly, the factor of whether construction of a coking unit is essential to Humble's business was given no express consideration by the Louisiana Supreme Court. The determining factors in *Reeves* in establishing that the work of the contractor was not part of the business of the principal appear to be that the construction was new and that Humble produced no proof that it did, as a matter of practice, or could if necessary, perform the activity of the contractor. In short, the construction of a coking plant was not part of the trade, business or occupation of an oil refinery.

The holding in *Reeves* is virtually indistinguishable in principle from the present case and, as the latest expression of the Louisiana Supreme Court on the subject, is controlling in this case.[6]

In Duhon v. Texaco, Inc., 5 Cir., 1974, 490 F.2d 91, we affirmed a summary judgment which held that plaintiff was a statutory employee of Texaco under Section 1061, and held that *Reeves, supra,* does not require a different result. Duhon's activity consisted of removing and hauling to a disposal plant salt water produced during oil and gas production at a Texaco well site. We found that this activity "so related to Texaco's business as to be considered an essential part thereof." *Id.* at 91. *Reeves* was distinguished, as follows: "The Court found that Humble was not in the construction business, and *that no employees of* Hum-

---

**6.** Appellee calls attention to Bellard v. Tri-State Insurance Company, La., 1973, 282 So.2d 453; Hart v. Richardson, La., 1973, 272 So.2d 316; Broussard v. Heebe's Bakery, Inc., La., 1972, 263 La. 561, 268 So.2d 656, and Brown v. Kaiser Aluminum and Chemical Corp., La. App., 1973, 289 So.2d 524.

*Bellard, Hart* and *Broussard* had in common one issue—whether a buyer-seller relationship, as contrasted to a principal-contractor relationship existed. In both *Bellard* and *Hart* the Louisiana Supreme Court concluded that compensation liability was not defeated merely because the transactions between the plaintiffs' immediate employers and the defendants included incidents of a buyer-seller relationship where the employer was performing work which was part of the principal's business. In

*Broussard,* plaintiff successfully maintained a tort action where the relationship between the principal and the contractor was strictly that of buyer-seller. The *Bellard, Hart* and *Broussard* decisions are clearly inapposite to the present case.

Brown v. Kaiser Aluminum and Chemical Corp., La.App., 1973, 289 So.2d 524, was a suit for damages by a contractor's employee, to which the statutory-employer defense was successfully urged and affirmed. The Court found that the work being done by the employee was that usually done by the owner's employees, was not new construction, reconstruction or even unusual repairs such as are ordinarily made by specialists. The facts are likewise distinguishable from the instant case.

ble customarily engaged in the work. By contrast, the brine being removed by Duhon was produced as a natural and necessary by-product of Texaco's business." (Emphasis added.) *Id.* at 92.

 Cases of the kind presented here are peculiarly dependent for their resolution upon their factual content. They must therefore be decided on a case-by-case basis because of the difficulty of formulating a criterion applicable to all cases. The legal principles which are applicable in such matters, as stated in the Louisiana decisions and in our own cases, have been closely relied upon. We are satisfied under the peculiar facts and circumstances prevalent here that plaintiff was not engaged in an activity customarily performed by Chevron's employees or which was part of Chevron's trade, business or occupation, so closely related thereto to become an integral part thereof and that it was not essential to its business. Chevron's business is producing and refining oil and gas, not installing pollution control sewerage systems. While the installation of the sewerage system was important to pollution control on its drilling platform in the Gulf of Mexico, it was not so closely related thereto as to become an integral part thereof and therefore was not essential to the employer's business as that term is understood in the context of being basic, fundamental, indispensable or imperative.[7]

The judgment n. o. v. is reversed and vacated and the case is remanded to the district court with direction to reenter the original judgment entered on the jury's verdict.

---

7. See J. I. Rodale, The Synonym Finder (Rodale Books, Inc., ed. 1965).