LEAR, Judge.
Plaintiff, Lloyd A. Hebert, filed suit against defendants, Union Oil Company of California and Charles J. Bergeron, in order to recover damages sustained by plaintiff in an accident which occurred on September 6, 1978. Defendants answered denying liability and alleging the “Section 6” defense found in LSA-R.S. 23:1032. After suit was filed, Employers Mutual Liability Insurance Company of Wisconsin intervened in order to recover workmen’s compensation benefits and medical expenses paid to plaintiff by intervenor as the workmen’s compensation insurer.
After a trial on the merits, judgment was rendered in favor of plaintiff and against Union Oil of California in the amount of $462,376.47. Judgment was further rendered in favor of the intervenor and against plaintiff for the amount of the workmen’s compensation benefits and medical expenses paid to him by intervenor. Defendant then appealed. In answers to the appeal, intervenor, while seeking to have the judgment recognizing its intervention affirmed, asserts that the amount awarded by the trial court should be increased to include those amounts that it is continuing to pay to plaintiff, and plaintiff seeks an increase in his damages from that awarded to the amount of $850,000.00.
The trial court, in its reasons for judgment, rendered extensive findings of fact and conclusions of law as to both the issues of liability and the amount of damages. In its lengthy and well-reasoned opinion, which we adopt in part, the trial court held as follows:
“FINDINGS OF MATERIAL FACT
“The Court finds the following material facts based on the preponderance of the evidence adduced at the time of trial:
“1) On September 6, 1978, the plaintiff, Lloyd Hebert, was involved in an accident and sustained injury aboard a fixed platform structure owned by the defendant, Union Oil of California and identified as West Gas Lift Manifold Platform, located near the S/L 2826 well # 38 in the Caillou Island field in inland navigable waters of the State of Louisiana.
“2) Mr. Hebert was there as an employee of Automatic Power, Inc., working under contract to Union Oil of California in order to check and repair, if necessary, an electronic aid to navigation located aboard the structure.
“3) Mr. Hebert reached the platform by the field boat ANN K manned by Robert Whitney, a Union employee.
“4) In order to reach the navigational light, Mr. Hebert, by necessity, had to step on a high pressure gas lift line located by Union immediately adjacent to the aid to navigation.
*1137 “5) When Mr. Hebert, in order to climb onto the battery box atop which the aid to navigation was located, stepped on a two inch high pressure gas lift line, the line failed, allowing gas under high pressure to escape and to literally blow Mr. Hebert twenty (20') feet into the air off the structure and into the water.
“6) The high pressure gas line was worn out and unsafe and failed as a consequence of external corrosion and internal corrosion and erosion and of Union’s negligent failure to inspect and maintain its lines.
“7) Lloyd Hebert sustained a severe compound fracture of the left leg and did not lose consciousness at any time. He has undergone eight (8) separate surgical procedures. He has not worked since the accident and cannot return to his previous employment. He cannot return to any employment until late 1980 or early 1981. He has a disability ranging up to 50% of the left extremity as a whole and as a consequence of his inability to return to his former employment, will sustain lost wages in the future. (The particulars of his injuries will be discussed further in the quantum section of these Reasons for Judgment).
“8) Lloyd Hebert in no way caused or contributed to his own accident and injury. Furthermore, he in no way assumed any risks which may have been involved.
“9) As a matter of fact, at the time of the accident, Lloyd Hebert was engaged in maritime employment within the meaning of the Longshoremen’s and Harbor Workers’ Compensation Act, 33 U.S.C. 901, et seq. and was working in a situs covered by the Act.
“10) As a matter of fact, the work Lloyd Hebert was doing at the time of his accident was not work falling within the trade[,] business or occupation of Union Oil of California as those terms of the Louisiana State Workmen’s Compensation Act have been interpreted. The service of aids to navigation on inland water structures had not been done by Union, nor was it industry practice for companies such as Union to do such work themselves. Furthermore, these activities were neither essential to the business of Union nor were they an integral part thereof. They were not necessary to the production of oil.
“11) Any obligation Union had to install and maintain aids to navigation was non-contractual.
“LIABILITY
“The details of Lloyd Hebert’s accident are not disputed. The Court’s Findings of Fact set out in Numbers 1 through 7 above are amply supported by the evidence and indeed have not been seriously questioned by the defendant, either during the trial or in post-trial memoranda. Liability of Union Oil for damages sustained by Mr. Hebert clearly follows under Olsen v. Shell Oil Company, 365 So.2d 1285 (La.1978) which holds the platform owner strictly liable without fault for injuries caused by defects or vices in their structures and their necessary appurtenances. The weak, corroded high pressure gas lift line involved in this case certainly qualifies as such.
“Further, an operator of oil and gas pipelines is bound to safely keep those products in the lines and not allow them to escape causing injury to others. Operators of such lines are bound to use care in laying and maintaining these lines and to carefully inspect them to detect and stop leaks. Wilson v. Scurlock Oil Company, 126 So.2d 429 (La.App.1961). The photographs of the failed section of pipe introduced into evidence as Exhibits P-7, P-8, P-10 and P-12 furnished ample evidence that Union negligently failed to fullfill (sic) this obligation in this instance resulting in Lloyd Hebert’s injuries. Furthermore, Mr. Lovell, the Union safety man testified that this pipe was simply worn out and needed to be replaced.
“Moreover, there is no evidence whatsoever in the record of any contributory negligence or assumption of the risk by Mr. Hebert which would bar his recovery.
“The only seriously disputed issue between the parties is the applicability of L.R.S. 23:1032 commonly referred to as the “Section 6” defense. The defendant concedes in brief that the defense is unavaila *1138 ble if the Longshoremen’s and Harbor Workers’ Compensation Act, 33 U.S.C. 901, et seq. applies instead of the Louisiana State Workmen’s Compensation Act 23:1021, et seq. which contains the defense. This Court and the parties are in agreement that Lloyd Hebert must satisfy the Supreme Court’s dual test of situs and status in order to be covered by the federal compensation act. Northeast Marine Terminal Company, Inc. v. Caputo, 432 U.S. 249, 97 S.Ct. 2348 [53 L.Ed.2d 320] (1977) and [P.C.] Pfiefer [Pfeiffer] [Company,] Inc. v. Ford, [444 U.S. 69] 100 S.Ct. 328 [62 L.Ed.2d 225] (1979).
“In order to fullfill (sic) the status requirement, Lloyd Hebert must have been engaged in maritime employment, Longshoremen’s and Harbor Workers’ Compensation Act, 33 U.S.C. 902. This Court so holds as a matter of fact based on the circumstances of his employment which involved sales and service of navigational aids with associated work on and over navigational water where the aids were installed and in service. Maritime employment, although not specifically defined in the Longshoremen’s and Harbor Workers’ Act, has reference to activities having to do with navigation or commerce on navigable waters. Weyerhauser Company v. Gilmore, (sic) 528 F.2d 957 (9th Cir., 1975), cert. denied, 429 U.S. 868 [97 S.Ct. 179, 50 L.Ed.2d 148] (1976), Fusco v. Perini, 601 F.2d 659 ([2nd Cir.] 1979) [444 U.S. 1028] 100 S.Ct. 697 [62 L.Ed.2d 664] (1980). Sales and service of aids to navigation on and over navigable water deals directly with the safe and proper conduct of navigation and commerce on navigable waters. Mr. Hebert’s activities generally and at the time of the accident were significantly related to navigation and to commerce on navigable waters and therefore are maritime in nature within the meaning of the Act and the jurisprudence.
“This is so, notwithstanding the fact that Mr. Hebert was not a longshoreman, harbor worker, ship builder, ship breaker, or ship repairman in the traditional sense of those terms and as they are enumerated in the Longshoremen’s Act. The act’s listing of these activities, is not exclusive and the stated test is ‘maritime employment’. [P.C.] Pfiefer [Pfeiffer] [Company, Inc.], supra Texports Stevedoring Co. v. Winchester, 554 F.2d 245 ([5th Cir.] 1977). Any remaining doubt as to coverage is resolved by the statutory presumption of coverage contained in the act, 33 U.S.C. 920(a).
“The situs requirement is set out in Section 903 of the Longshoremen’s Act and is likewise satisfied by the facts and circumstances of this case. The structure shown on photographic exhibits P-7 and P-10 clearly contemplates docking and the performance of maritime activities such as the work of the plaintiff, Lloyd Hebert. Moreover, it was adjacent to navigable waters as required by the Act. Since both situs and status are present, the federal compensation act applies and the Section 6 defense is unavailable to the defendant in this case. Lloyd Hebert is therefore entitled to judgment and compensation in damages. The intervenor is similarly entitled to recover.
“Assuming, arguendo, however, that the Federal Act does not apply and that the statutory employer defense is available to Union Oil, the result in this case is not changed since, as a matter of fact, this Court holds that Lloyd Hebert was not engaged in activities falling within the trade[,] business or occupation of the defendant at the time of the accident. A preponderance of the evidence presented convinces this Court that the business of Union Oil of California is the production of gas, while the business of the plaintiff and his employer, Automatic Power, Inc., is sales and service of aids to navigation.
“Evidence showing that Union Oil has not serviced its own navigational aids in inland waters for a decade or better was uncontroverted. Furthermore, the only evidence of industry custom demonstrated that Union and other similar companies also contract out the service of aid to navigation in inland waters. The fact that one or two companies, according to Mr. Lanoux, the vice-president of Automatic Power, service their own aids to navigation in certain lim *1139 ited areas of Louisiana state waters does not change the fact that the established and accepted industry practice and custom, including Union Oil’s, was to the contrary. While the maintenance of aids to navigation may be desirable to Union, it was neither essential to Union’s business of producing oil and gas nor was it an integral part thereof. Lushute v. Diesi, 354 So.2d 179 ([La.] 1978); Reeves v. Louisiana-Arkansas Railway, 282 So.2d 503 (La.1973). For additional insight into this area of Louisiana law, see Freeman v. Chevron Oil, 517 F.2d 201, 5th Cir. (1975) and Blanchard v. Engine and Gas Compressor Services, Inc., 613 F.2d 65, ([5th Cir.] 1980).
“Additionally, while Union’s contention that the plaintiff’s sole remedy against it is compensation where the work is being performed as a consequence of a contractual obligation of Union is generally correct, the application for an aid to navigation introduced as Exhibit D-2 and relied upon by Union as evidence of such a contract is in fact not a contract. Union’s mandatory compliance with law can hardly be considered a consensual agreement supported by bargained for consideration.
“Finally, the mere fact that Union was legally obligated to install and maintain aids to navigation does not necessarily bring that activity within Union’s trade[,] business or occupation. The gas lift platform in question certainly could have been operated without navigational lights, although it was desirable from Union’s point of view to have the lights and to comply with Coast Guard regulations. If Union’s simplistic approach to this issue were accepted by the Court, many anomalous situations would result. For example, if a service station employee certified a bakery truck to be safe and then issued a safety inspection sticker, he would arguably be engaged in the trade[,] business or occupation of the bakery thereby preventing him from recovering for injuries sustained from a tire rim exploding during his inspection merely because the accident occurred in connection with the bakery’s compliance with legal inspection regulations. Certainly the service station employee would be surprised to discover that his job of vehicle inspection and service was part of the bread baking business. It is the opinion of this Court that Union’s similar interpretation of the statute in this case goes too far.
“According to the evidence, Mr. Hebert was rendering expert technical services on behalf of a company engaged in a highly specialized field, a field in which Union was not competing or actively engaged in inland waters in Louisiana on platforms such as the one where the plaintiff’s accident occurred. These services were clearly not part of Union’s trade[,] business or occupation and the fact that maintenance work may have been required by law does nothing to change that fact.
“QUANTUM
“As stated in the Findings of Fact set out hereinabove, the Court is pursuaded (sic) that Mr. Hebert has sustained a severe permanently disabling injury. The evidence shows that he has undergone eight (8) separate surgical procedures on his left leg, ankle and foot, all requiring general an-ethesia. In addition to a severe compound fracture of the lower left leg requiring internal fixation with a metal plate and screws, Mr. Hebert has had a triple fusion of the ankle involving various complications resulting in prolonged treatment and the many surgical procedures. He has undergone an arthrotomy of the left knee and a myelogram of his low back for associated complaints resulting from added stress placed on those parts of his body by the injuries to his leg, ankle and foot. He has a permanent limp and must wear high-topped orthopedic shoes permanently. He can be expected to experience pain and swelling for the balance of his life. He is also likely to experience progressive degenerative arthritis of the left ankle. His treating physician, Dr. Christopher Cenac, testified that the plaintiff cannot engage in any activities involving climbing, squatting, heavy lifting or prolonged standing or walking. In any employment setting he will require periodic rest and leg elevation.
*1140 “As a result of his residual disabilities and the activity of limitations placed upon him by the treating physician, the Court finds that Mr. Hebert cannot return to his previous employment which required these activities. The Court gives great weight to the persuasive testimony of Mr. Hebert to the effect that he attempted to return to his regular duties but simply could not do so. His prospects for reemployment are bleak inasmuch as his work experience is limited to oilfield work, much of which required at least occasional heavy lifting and carrying. It therefore seems unreasonable to expect him to return to that field of endeavor. He has a high school diploma and some college experience, but quit because he was not well suited for college level work.
“It has been stipulated that Mr. Hebert has already incurred $28,981.41 in past medical expenses and the evidence shows that additional medical expenses will be incurred in the future. Plaintiff’s expert actuary and economist placed past lost wages at $34,170.06. With respect to future loss, plaintiff introduced evidence showing that if Mr. Hebert returns to employment earning a minimum wage, he will still loose (sic) $480,032.94 during the remainder of his work life expectancy. If he cannot find such work, he could lose up to $644,583.67. Taking all factors into consideration damages are awarded as follows:
“Past Wage Loss-$ 34,170.06
“Future Wage Loss and Impairment of Earning Capacity-$200,000.00
“Past Medical Expenses-$ 23,981.41
“Future Medical Expenses-$ 4,225.00
“Past and Future Mental and Physical Pain and Suffering and Permanent Disability-$200,000.00
TOTAL-$462,376.47
“With respect to the intervention, it has been stipulated that $10,998.00 in compensation benefits and $23,981.41 in medical expenses have been incurred on behalf of the plaintiff and paid by the intervenor, Employers Mutual Liability Insurance Co. of Wisconsin. Although these payments were made under Louisiana State Workmen’s Compensation Act and although the weekly compensation benefits were not accepted by the plaintiff, (apparently in an effort to avoid any allegations of election to receive State Compensation Benefits) the Court nevertheless finds that all such payments are to be reimbursed to Employers Mutual Liability Insurance Company of Wisconsin by the plaintiff out of the judgment rendered in favor of the plaintiff in this case, in light of the fact that such payments would have been due and owing under the Longshoremen’s and Harbor Workers’ Compensation Act. That sum, together with medical expenses incurred by stipulation of all parties, are then to be reimbursed by the plaintiff to Employers.”
Plaintiff has brought to our attention the recent case of Alford v. American Bridge Division, United States Steel Corporation, 642 F.2d 807 (5th Cir., 1981); on rehearing, 655 F.2d 86 (5th Cir., 1981). In Alford, supra, a number of workers were injured, and the court considered their cases separately in its opinion. Hector Cantu was the injured employee whose case is analogous to the case at bar. Cantu was a maintenance welder who was injured while working on a “black diamond” which was a navigational aid intended and required to be attached to the tops of barges as a daytime indicator when the barges were towing loads exceeding six hundred feet. The court found that the “black diamond” daytime indicator on which Cantu was working was a significant aid to and part of navigation and commerce and that Cantu therefore did have “employee” status as defined by LHWCA. We find that Alford, supra, is directly on point with this instant case and lends further support to the trial court’s decision.
While plaintiff has answered the appeal seeking an increase in damages, in reviewing this record we find that the evidence supports the trial court’s judgment with regard to quantum.
Finally, we find that intervenor should have the judgment of the trial court increased to include whatever amounts they *1141 have paid to plaintiff from the time judgment was signed until this judgment becomes final.
For the above reasons, the judgment of the trial court in favor of plaintiff, Lloyd A. Hebert, and against defendant, Union Oil Company of California, is affirmed.
The judgment rendered in favor of inter-venor, Employers Mutual Liability Insurance Company of Wisconsin, and against plaintiff, Lloyd A. Hebert, is amended, in order to increase said judgment to include all amounts paid by intervenor to plaintiff through the time that this judgment becomes final.
Defendant-appellant, Union Oil Company of California, is to pay all costs.
AMENDED IN PART AND AFFIRMED AS AMENDED.