SCHOTT, Judge.
This is a workmen’s compensation proceeding instituted by Mr. and Mrs. Harold Lyon, the parents of John Lyon who was killed in an on-the-job accident on September 21, 1974. The suit was brought against Henry Cobena as the immediate employer of John Lyon and against Brown’s Velvet Dairy Products, Inc. as the statutory employer of John Lyon pursuant to LSA R.S. 23:1061. Plaintiffs voluntarily dismissed their suit against Henry Cobena and proceeded to trial against Brown’s Velvet alone. From a judgment dismissing their suit against Brown’s Velvet the plaintiffs have appealed.
The issue is whether Cobena stood in a vendor-vendee relationship to Brown’s Velvet or in a principal-contractor relationship so as to make Cobena’s direct employee *9 John Lyon entitled to workmen s compensation benefits against Brown’s Velvet.
Henry Cobena was a distributor of Brown’s Velvet milk and dairy products in a territory consisting of the westbank of St. Charles Parish pursuant to a written contract between the parties which provided as follows:
“1. Brown agrees to sell and Distributor agrees to buy all of Distributor’s requirements milk and other dairy products handled or produced by Brown, other than ice-cream.
2. Brown agrees to furnish Distributor a list of customers who uses Brown’s dairy products in the territory westbank of St. Charles Parish. These said customers will always remain the property of Brown’s Velvet and of which Distributor has paid no monies for such.
3. Distributor agrees to pay Brown cash for such products purchased.
4. It is understood that 60 days notice must be given to Brown should Distributor decide to give up the distributorship of milk in said territory westbank of St. Charles Parish, and upon such termination Distributor would refrain from selling milk in the territory given up for a period of six (6) months and Brown must give Distributor sixty (60) days notice should another Distributor be desired in said territory.
5. Distributor agrees that a representative of Brown may at any time accompany him on route in said territory.
6. It is further understood that this contract and agreement is entered into for the mutual benefit of both parties concerned and Distributor has right to attend all Brown’s sales meetings.”
Brown’s Velvet had originally served its customers in this territory directly through the use of its own vehicles and employees but some years before Cobena became involved had gone into the distributorship arrangement with an independent distributor to service these customers. Cobena bought the distributorship in 1973 and employed John Lyon as a truck driver delivering the products to residential customers as well as schools and groceries. All of Cobe-na’s trucks were marked as Brown’s Velvet trucks, and although the record is not perfectly clear, the sales representative of Brown’s Velvet who had overseen Cobena’s territory testified that he thought Brown’s Velvet had sold Cobena all of his milk trucks.
The arrangement was for Cobena to place an order with Brown’s Velvet each afternoon for his needs in milk and dairy products and on the following morning Brown’s Velvet would deliver these products to a service station where Cobena’s trucks were stored and load the products on the trucks. Some other pertinent facts concerning the relationship were that shortly before this suit was tried Brown’s Velvet took a judgment against Cobena for $65,000 on the account of milk purchased by Cobena from Brown’s Velvet, and whenever there were any complaints from customers about sour milk Brown’s Velvet representative would go out to the customer and trouble shoot the problem with the customer.
In dismissing plaintiff’s suit the trial judge relied on Broussard v. Heebe’s Bakery, Inc., 268 So.2d 656 (La.1972) concluding that the relationship between Cobena and Brown’s Velvet was nothing more than a vendor-vendee relationship as opposed to principal and contractor.
The Broussard case is distinguishable. In the first place the posture of the case was entirely different from the instant case with Broussard being a direct employee of Wolf attempting to sue in tort Heebe’s which purchased bakery products from Wolf. Broussard was met with the defense that he was the statutory employee of Heebe’s, so that his exclusive remedy against Heebe’s was in workmen’s compensation. The court held that the relationship between Heebe’s and Wolf was not principal-contractor but instead vendor-vendee. The court found that Heebe’s did not exercise any control over Wolf and noted that the case did not fall under certain recognized exceptions to the rule that where the vendor-vendee relationship was present liability in workmen’s compensation would *10 only be found if the transaction was a device or subterfuge to avoid liability under the Compensation Act or whether the arrangement was accompanied by an undertaking by either party to render substantial services in connection with the goods sold.
We have concluded that there was a significant degree of control exercised by Brown’s Velvet over Cobena such as to make Brown’s Velvet the statutory employer of John Lyon. The following indicia of control when taken together are sufficient to reach this conclusion.
1. The contract required Cobena to handle Brown’s Velvet products exclusively and purported to prevent him from selling milk to anyone else in the territory within six months after the contract was terminated.
2. Brown’s Velvet had the right to terminate Cobena on a 60-day notice.
3. Brown’s Velvet, while purported in the contract to sell the products to Cobena for cash, had allowed Cobena to run up an account with a $65,000 balance due Brown’s Velvet.
4. The contract required that Cobena permit a representative of Brown’s Velvet to accompany his employees on their routes at any time that Brown’s Velvet desired.
5. The contract gave Cobena the right to attend Brown’s Velvet sales meeting.
6. Cobena’s trucks were all identified as Brown’s Velvet trucks.
7. Brown’s Velvet at all times remained the owner of the customer lists.
8. Brown’s Velvet retained the right and responsibility to handle any complaints from customers with respect to sour milk.
When these factors are considered together it seems clear that Brown’s Velvet did exercise control over Cobena both economically and as a practical matter. Its ability to extend substantial credit to Cobe-na together with its right to terminate Cobena at will, along with the other matters enumerated above, which enabled Brown’s Velvet to involve itself rather intimately in Cobena’s dealings with the customers all add up to a sufficient degree of control to make Cobena an agent of Brown’s Velvet and John Lyon a statutory employee.
This conclusion is consistent with Samson v. Borden Co., 92 So.2d 152 (La.App. 1st Cir. 1957) and Buettner v. Polar Bar Ice Cream Co., 17 So.2d 486 (La.App.Orl.1944). See also 13 La.Civ.L.Tre. (Malone & Johnson) § 73.
We are unable to compute the exact amount of weekly benefits due plaintiffs under Act 25, Extra Session of 1968 and R.S. 23:1232 because the record does not establish the amount of decedent’s salary or the proportion of decedent’s salary contributed to plaintiffs in the year prior to his death. The record shows only that plaintiffs got 50% of the salary each week and used it along with contributions from other family members as a common fund to run the household. We can only conclude that plaintiffs are entitled to some percentage of 65% of decedent’s wages for 500 weeks, subject to the limitations prescribed by Act 12 of 1974.
Accordingly, the judgment appealed from is reversed and set aside and the case is remanded to the district court for the purpose of determining the amount of weekly payments due plaintiffs. Such payments are to bear legal interest from the date each payment became due. All costs are assessed against defendant.
REVERSED AND REMANDED
SAMUEL, J., dissents and assigns reasons.