PITCHER, Judge.
Defendant, Texaco, Inc. (“Texaco”), appeals from the trial court judgment granting plaintiff, Walter Davenport, worker’s compensation and medical benefits.

PROCEDURAL HISTORY

On December 13, 1988, plaintiff filed a Claim for Worker’s Compensation against Texaco, alleging that Texaco was the statutory employer of plaintiff and thus, liable under LSA-R.S. 23:1061.
Texaco answered this claim and specifically denied that plaintiff was within the course of *124 his employment at the time of the accident or that plaintiff, at the time of the accident, was doing the business, trade or occupation of Texaco.
On June 21, 1989, Texaco filed a third party demand against A.N. Collette Oil Company, Inc., (“Collette”), seeking contribution and/or indemnity, pursuant to a Marketer Agreement for Motor Fuels that existed between these two parties.
On August 29, 1990, the case came before the Honorable Leo P. Higginbotham, Jr. for a bench trial. During the trial of this matter, the electricity in the courthouse failed. Judge Higginbotham did not want to try the case piecemeal and ordered that the case be retried in its entirety.
The case was retried before Judge Higginbotham on November 5, 1990. After the presentation of the evidence, the court took the matter under advisement. All parties submitted post-trial memorandum at the request of the court.
On December 18, 1990, Judge Higginbotham rendered judgment in favor of Texaco as to plaintiffs demand. The third party demand against Collette was denied.
On January 10,1991, the Honorable Frank Saia[1] signed the written judgment, in accordance with Judge Higginbotham’s written reasons for judgment. On January 22, 1991, plaintiff moved for a new trial, contending that the judgment was contrary to the law and evidence and was prejudicial to plaintiff. The hearing on this motion was held on February 22,1991. After reviewing the trial transcript and hearing argument, Judge Saia found that Judge Higginbotham’s judgment was in error and, thus, granted a new trial.
The case was retried on March 13, 1992. Neither party called any new witnesses nor introduced any new evidence. The retrial consisted of submitting the written transcript and exhibits introduced at the previous trial. The trial court, in its oral reasons for judgment, stated:
All right. The third party demand against defendant Collette is — I grant judgment in favor of the third party defendant Collette and against the plaintiff in the third party demand, Texaco, dismissing that demand at Texaco’s cost.
I find that the contract is not only onerous; it was almost executed under duress, and the accident sued upon herein is outside of the scope of the conditions of the contract.
I grant judgment in favor of plaintiff Davenport and against Texaco. I grant him workmen’s comp, in the amount of $100 for two hundred twenty weeks; that’s two weeks in December of 87, 10 weeks in 1992 and the other two hundred and something weeks in the years 88, 89, 90 and 91, a total amount of $22,000.00, plus 33⅝% attorney fees, $7,326.00; twelve percent penalty on the $22,000.00, $2,640.00. I grant him a judgment to be reinstated workmen’s comp, at $100 per week, with medical benefits; and I order that plaintiff Davenport submit to a medical examination.
Texaco has appealed from this adverse judgment, assigning the following errors:
1. The trial court erred in finding that Texaco Inc. was plaintiffs statutory employer.
2. The trial court erred in finding that plaintiff received personal injury by accident arising out of and in the course of his employment.
3. The trial court erred in finding that plaintiff was disabled where no evidence of his nature, extent or term of the alleged disability was introduced at trial.
4. The trial court erred in fixing plaintiffs weekly benefit rate at $100.00.
5. The trial court erred in awarding penalties and attorney’s fees.
6. The trial court erred in dismissing Texaco Inc.’s Third Party Demand.

FACTS

Texaco entered into a Marketer Agreement For Motor Fuels with Collette. This *125 agreement was effective on May 1, 1987, through June 30, 1990. In the agreement, Texaco agreed to sell and deliver motor fuels to the purchaser, Collette.
Collette entered into a lease with Joseph P. Hoffman (“Hoffman”), whereby Hoffman would lease a business known as “The Station”, operated as “Bayou Truck Stop”. Pursuant to this lease, Hoffman was bound to purchase all gasoline, diesel and allied products to be sold from Bayou Truck Stop from Collette. The term of this lease commenced on August 19, 1986, and terminated on August 18, 1987. The lease terms provided for the continuation of the lease on a month-to-month basis until written notification of a desire to terminate the lease by either party, at least ten days prior to the expiration of the month.
Plaintiff had been employed on a day-today basis by Hoffman for approximately six months before the accident occurred. He testified that he would go by the station every morning to see what needed to be done. Plaintiff usually emptied the garbage three days a week, unless it was a particularly busy day and then, he would add an extra garbage day. Plaintiff stated that he had no regular working hours. He would go in at 7:00 a.m. and would work late, depending on the work that had to be done. Besides the garbage collection, plaintiff picked up parts, as needed, for the “big” trucks. Plaintiff stated he often helped Hoffman work on these eighteen wheelers. Plaintiff also testified that the station had a self-service area and that he would sometimes help the ladies pump their gas and wipe the windshields. Plaintiff occasionally cut the grass around the sump pit, located behind the station.
Plaintiff stated that he often used his own vehicle to haul the garbage and pick up the parts. Hoffman provided plaintiff with a Texaco cap, shirt and pin to wear while at work. Plaintiff was always paid in cash by Hoffman. He was not paid regular wages. Plaintiff stated that he would receive $20.00 every time he dumped the garbage and $25.00 for cutting the grass around the sump pit. When he picked up parts, plaintiff testified that he got a percentage of what Hoffman made. There was no evidence, such as check stubs or tax returns, which would indicate how much plaintiff was paid by Hoffman.
On December 18, 1987, plaintiff was injured at the Bayou Truck Stop while mounting his own tire. Plaintiff testified that he had fixed tires for other people before. Apparently, plaintiff kept .several tires in the back of his truck, and he was mounting one of these tires when he was injured. Plaintiff had mounted the tire and was sitting on it, putting air into the tire with the air hose provided to customers in the front of the truck stop, when it blew up. Plaintiff stated that, evidently, the tire was not good or there was too much air in it. Plaintiff had not obtained the tire from the station nor had he used the station’s equipment in attempting to fix the tire.
As a result of this accident, plaintiff suffered a broken leg, a broken arm and several cuts to his face.

STATUTORY EMPLOYMENT

At the time of plaintiffs accident, LSA-R.S. 23:1061 provided:
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been hable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
*126 Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
At the time of the accident, LSA-R.S. 23:1032 defined “principal” as follows:
[A]ny person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof. (
In the instant case, Texaco did not have a principal-contractor relationship with Col-lette, and thus, had no principal-contractor relationship with Hoffman. The relationship between Texaco and Collette was that of a vendor and a vendee. Therefore, the Workmen’s Compensation Act does not apply.
The compensation act does not apply where the transaction between the immediate employer and the person sought to be held liable as his employer is that of purchase and sale, or where some other relation besides that of principal and contractor exists between them, provided, * * * the transaction is not a mere device or subterfuge to avoid liability under the workmen’s compensation act. Broussard v. Heebe’s Bakery, Inc., 268 So.2d 656, 660 (La.1972).
In the present case, there exist several different contracts. The initial agreement between Texaco and Collette was for the sale of motor fuels. There was a lease agreement between Collette and Hoffman for a business known as Bayou Truck Stop. As a condition of the lease, Hoffman was to purchase all gasoline, diesel and allied products from Col-lette. Texaco was not a party to that lease, which was executed prior to the Marketer Agreement between Texaco and Collette. Also, the lease does not specify which brand of products Hoffman is required to purchase from Collette.
In Lyon v. Cobena, 391 So.2d 8 (La.App. 4th Cir.1980), the court was faced with a similar situation. Cobena was a distributor of Brown’s Velvet milk and dairy products. The plaintiff was employed by Cobena as a truck driver. The plaintiff had alleged that Brown’s Velvet was his statutory employer, and liable for workmen’s compensation benefits. In determining that Brown’s Velvet was the statutory employer of plaintiff, the court looked to the degree of control exercised by Brown’s Velvet over Cobena.
After reviewing the agreement between Texaco and Collette, we find that there was no such indicia of control. Pursuant to the Marketer Agreement, Texaco agreed to sell, and Collette agreed to buy, a certain amount of motor fuels, at a price determined by Texaco’s applicable marketer price. The agreement also set forth certain requirements for the delivery and storage of the motor fuels. Many of the requirements set forth in the agreement addressed safety measures to be taken by Collette in the delivery and handling of the motor fuels.
Collette was not precluded from purchasing motor fuels from other sources. A clause in the agreement provided:
11. INDEPENDENT STATUS OF PURCHASER. This Agreement shall not be deemed to reserve, give or grant to Seller any right to manage or control the day-to-day business of Purchaser and/or the retail facilities it operates or serves, and neither Purchaser nor the operators of retail facilities it operates or serves nor its or them employes [sic] or agents shall be agents or employes [sic] of Seller for any reason or for any purpose whatsoever. Purchaser is, and shall be at all times, an independent business entity that is free to select its customers, purchase and sell products from sources other than Seller, set its own selling prices and terms of sale, and generally conduct its business as it determines subject to the obligations set forth in this Agreement.
Attached to the Marketer Agreement was an Appendix entitled “Minimum Standards”. The agreement required Collette to conduct its retail operations and those owned, operated and/or served by Collette in accordance with these minimum standards. The stated purpose of these standards was that “... it is *127 in the interest of the parties to this Agreement for Purchaser to affirmatively conduct its business to reflect favorably on said parties and to further promote public acceptance of Seller’s brand names, trademarks and motor fuels.” The agreement provided that if Collette or those supplied by Collette did not meet these minimum standards, upon written demand by Texaco, any Texaco identification was to be removed within five days of the demand. The agreement is silent as to procedures to be instituted in order to ensure that the minimum standards were met by Collette.
Clearly, Texaco did not exercise enough control over Collette’s operations to render him a statutory employer of plaintiff. Also, any control exercised by Texaco over Collette was diminished by the intervening relationship between Collette and Hoffman. There is no evidence that Hoffman was aware of, or made a party to, the Marketer agreement between Texaco and Collette. The lease between Collette and Hoffman was entered into before the Marketer Agreement came into existence. Furthermore, the lease does not specify the brand/brands of motor fuels Hoffman was required to purchase from Collette. The only connection between Hoffman and Texaco is the fact that Collette sells Texaco products to Hoffman pursuant to the Marketer Agreement. Texaco clearly exercises no control over the day-to-day operations of the Bayou Truck Stop.

ASSIGNMENTS OF ERROR NUMBERS TWO, THREE, FOUR, FIVE AND SIX

Because we find merit in Assignment of Error Number One, we pretermit discussion of Assignments of Error Numbers Two through Six.

CONCLUSION

Accordingly, the judgment of the trial court is reversed. All costs of this appeal are assessed to plaintiff.
REVERSED.

. When Judge Leo Higginbotham's term expired on December 31, 1990, he was succeeded in office by Judge Frank Saia.